Sarah Finch and others *vs.* Jesse Finch.

No 53.—SARAH FINCH and others, plaintiffs in error *vs.* JESSE FINCH, defendant in error.

[1.] A legatee cannot propound a will for probate, until the executors named therein, have been cited to prove the testament, and take upon themselves the execution thereof; or else to refuse the same; or some good cause be shown why this is omitted.

[2.] It is not necessary for the caveators to *plead* that the legatee propounding the will, had not cited the executors. It may be taken advantage of at any time; and the Court will itself, upon its own motion, refuse to entertain the proceeding, whenever this fact is brought to its attention.

[3.] Any person other than the executor, propounding the will for probate, must show, either by his own oath, or by *aliunde* proof, that he has some interest under the will. The fact that the propounder is named as a legatee in the will, is sufficient testimony to that point.

[4.] The Civil and Canon Law, governing the proceedings in the Ecclesiastical Courts in England, in relation to testamentary causes, is the law of our Courts of Ordinary, upon similar questions.

[5.] A contract by the legatee, not to offer the will for probate, but to divide the estate of the deceased ancestor, according to the Statute of Distributions, is not a bar in the Court of Ordinary, to the propounding of the will. The Courts of Ordinary will not decide upon the validity of any contract, which the parties may have entered into, but upon the *factum* of the will only, leaving the rights of the parties to be determined by the appropriate tribunals thereafter.

Caveat to Will, on appeal, in Oglethorpe Superior Court. Tried before Judge BAXTER, April Term, 1853.

Jesse Finch, one of the legatees under the alleged will of William Finch, deceased, propounded the same for probate, and gave notice thereof to the next of kin. They entered their plea and caveat to this application, and alleged therein, that shortly after the death of William Finch, all of the legatees and heirs at law, agreed that the will should not be set up; but that the estate should be distributed under the Statute of Distributions—which agreement to distribute, was reduced to writing: that the propounder, Jesse Finch, received under this agreement, his distributive share of the estate—has sold a part thereof, and has never offered to return any part thereof; and

that this agreement was executed more than nine years before the motion to propound the will.

The Ordinary refused probate of the will, and sustained the plea; from which decision Jesse Finch, the propounder, appealed. Upon the hearing of the appeal, counsel for caveators moved to dismiss the application, on the grounds:

1st. That Jesse Finch, not being an executor named in the will, could not be a propounder of the same, until he had called upon the executors named therein, to propound, and they had refused so to do, or showed some other reason why the executor had not propounded.

2d. Because Jesse Finch, not being an executor named in said will, could not propound the same, until he had showed to the Court that he had an interest in the same, by filing his own affidavit thereof, or by some other evidence.

The Court refused the motion, and caveators excepted.

The caveators moved to introduce evidence to sustain the issue tendered by them in their pleas; which evidence the Court rejected, and decided that no evidence could be received under the said pleas, none of them being relevant, but that the evidence must be confined to the question of *devisavit vel non*.

To this ruling, caveators excepted; and upon these exceptions, error is assigned.

T. R. R. Cobb, for plaintiff in error.

Cone, for defendant in error.

*By the Court.*—Lumpkin, J., delivering the opinion.

[1.] Was the Court right in refusing the motion of the caveators, to dismiss the proceeding, on the ground, that Jesse Finch, not being an executor named in the will, could not be a propounder of the same, until he had called on the executors therein nominated, to propound the will, or else to refuse to do so? Upon this point the rule is clear, as laid down by Mr. Williams, and all the elementary works upon this subject:—

Sarah Finch and others *vs.* Jesse Finch.

" The person *alone* by whom the testament can be proved, is the executor named in it, whom (as before stated) the Ordinary, or other person having authority for the probate of the testament, may cite, to the intent to prove the testament and take upon him the execution thereof, or else to refuse the same."— (1 *Wms. on Ex'rs*, 271, 309. *Swinb. Pl.* 6 *S.* 12 *pl.* *Godolphin Pl.* 1, *Ch.* 20, *S.* 2.)

This is no arbitrary rule, but one founded in good sense and reason. The person to whom the testator has confided the execution of his last will and testament, is certainly entitled to the appointment, in preference to all others. Wills are often made for no other purpose but to secure this privilege. Besides, there are pecuniary benefits attached to the office of executor, of which the individual cannot be deprived, unless he fails or neglects to perform his duty ; or labors under some legal disability.

[2.] Indeed, we do not understand the able counsel, who represents the defendant in error, to dispute this principle.— He insists, however, that the objection came too late, not having been taken before the Ordinary, nor on the appeal, until after the caveators had pleaded to the merits, as he is pleased to term it. Without stopping to inquire whether this technical rule of pleading is applicable to a proceeding like the present, we think that it was incumbent on the propounder to have made this preliminary proof, before he could be heard in his own behalf. Until the executors were cited to prove the will, or good cause shown why they were not, such as their death or non-residence, the propounder had no right to offer the will for probate, on his own account. A motion to dismiss the application, therefore, was in order at any time. It might be made by a friend of the Court, who was not immediately concerned in the cause ; and it would have been error in the Court to have disregarded it.

[3.] Another ground taken by the caveators to dismiss the application was, that Jesse Finch, not being an executor named in the will, could not propound the will, until he had showed

to the Court, that he had an interest in the same, by filing his own affidavit thereof, or by some other evidence.

The proposition asserted in this assignment is a sound one; and our judgment is, that the will which was produced, showing, as it did, upon its face, that Jesse Finch, the propounder, was a legatee under the will, the rule of law was fully complied with. Where the interest does not *prima facie* appear, as, for instance, where a creditor seeks to set up the will, the propounder may make his interest appear by his own oath; or by some other testimony. But here, a resort to *aliunde* evidence was unnecessary. In a note to the last edition of Mr. Williams' Treatise on the Law of Executors and Administrators, it is stated, that "Some think that a will may be propounded for probate, at the instance of such as have no interest, to the intent that thereby they may be certified whether the testator left them a legacy." (1 *Volume, p.* 271.) And to this point, the American Editor cites *Godolphin, Pl.* 1, *C.* 20, *S.* 2.

We come now to the last and main question discussed in this case.

The caveators filed a plea in bar of the application made by Jesse Finch, to prove the will of William Finch, his deceased father, to this effect, to wit: that shortly after the death of their ancestor, all the legatees and heirs-at-law, Jesse Finch being one of them, agreed that the will of the said William should not be set up, but that the estate should be distributed under the Statute of Distributions—which agreement was reduced to writing; that the propounder, Jesse Finch, received under this agreement, his distributive share of the estate—had sold a part thereof, and had never offered to return any part of the same; and that this agreement was executed more than nine years before the motion to propound the will.

After the Court had overruled the preliminary motion to dismiss the proceeding, which has already been considered, the caveators moved to introduce evidence in support of their plea. But this the Court refused to allow, holding that the only issue to be tried was, the question of *devisavit vel non.*

[4.] On the threshold of this branch of the argument, the Court has been entertained and instructed by an elaborate examination, on the part of the counsel for the plaintiff in error, into the nature and foundation of the jurisdiction of the Ecclesiastical Courts of England, and Courts of Ordinary of this State. The object of this investigation was, to demonstrate that these Courts are governed by the Civil and Canon, and not the Common Law; and that where the Civil and Canon Law obtained, there was no such distinction as Law and Equity. That the Court took cognizance of all the matters connected with the cause; and meted out justice to the parties; not upon any narrow and technical rule, but upon the merits, and frequently, the morality of the transaction. That it would be novel in such a forum, to say to a party, this proceeding is grossly unjust, but you must apply for relief to Chancery, where conscience reigns.

The view we take of this subject is simply this: in 1784, the Common Law was adopted in this State, as it existed at the Revolution, so far as it was suited to our situation and circumstances. The Common Law includes general customs and particular customs; and likewise, those particular Laws that are observed in certain Courts. Many of the general customs of England were never in force in this State—as for instance, that the eldest son alone, was heir to his ancestor; or the right of primogeniture, as it is commonly called. The particular customs of special districts or certain parts of the Kingdom, were never recognized here, because they were unsuited to our condition. The particular Laws, the third branch of the Common Law, and by which is meant the *Civil* and *Canon* Laws, are just as much adopted as any other portion of the unwritten Law of England. There are four Courts in England, in which the Civil and Canon Laws are observed, under certain restrictions. One of these is the Courts Christian, or the Ecclesiastical Courts. To the Ecclesiastical Courts in England, and to the Courts of Ordinary in Georgia, (their successors and legal representative, in part at least,) belongs the jurisdiction of all testamentary causes. Of course, therefore,

the practice which obtains under the Civil and Canon Law, and not that which belongs to the Common Law proper, as contradistinguished from these systems, must prevail in our Courts of Ordinary; and also in our Superior Courts, when sitting on appeals from the Courts of Ordinary. And such, we apprehend, has been the general understanding of the profession in this State.

[5.] This doctrine then, being conceded, the question is, should the Court of Ordinary, or the Superior Court, sitting as a Court of Ordinary, *pro hac vice*, on the appeal trial of this cause, have passed upon the issue made by the defence set up by the caveators?

It is not necessary. for the purposes of this decision, to express any opinion upon the validity of the contract entered into by the heirs of William Finch, for the division of their deceased father's estate. It has been assailed as contrary to public policy, inasmuch as it wrests the estate from the due course of administration, according to the laws of the land. Where there are no creditors, and the rights of minors are not prejudiced, we are not prepared to admit that such an agreement should not be enforced. On the contrary, in *Turk vs. Turk and others*, (3 *Kelly*, 422) this Court intimated pretty strongly that a Court of Chancery would decree the performance of such an agreement. And in the more recent case of *Jones, adm'r., and others vs. Rogers and others*, decided at Americus, (1853) this opinion was still more distinctly expressed.

But the inquiry recurs, did the Court below do right in refusing to entertain jurisdiction over this subject-matter, and confining the parties to the *factum* of the will? By reference to the practice of the Ecclesiastical Courts in England, it will be found that their uniform course, is in accordance with the direction given to this case, by His Honor Judge Baxter.— Take, as an illustration, the case of *Sappenden vs. Walsh*, (1 *English Eccl. Rep. Top. p.* 100.) The will and codicil of Anne Thompson, widow, were propounded for probate; both made during her coverture. The property had devolved to the testatrix partly under the will of Anne Wilson, and partly un-

der the will of Thomas Martin. By the former instrument, the property had been left to trustees, for her use, with the power to her of disposing of it, "By any writing purporting to be and in the nature of her last will and testament." By the will of Thomas Martin, a legacy had been bequeathed "To her and her heirs, executors and administrators and assigns, absolutely and forever, to and for her and their own sole and separate use and benefit."

Two objections were taken to the probate. First, that Anne Thompson had no right to dispose of her property by will, for want of power from her husband, authorizing her to do so.— And secondly, that the codicil disposes of property not her own, as by the will of Thomas Martin, who bequeathed it to her, it was not left to trustees for her separate use.

By Sir John Nicholl, "The probate of this Court does not decide upon the right of disposal; *it decides merely upon the factum of the instrument;* perhaps if no probate were granted by this Court, the person to whom the property is left, might be unable to recover it."

Again: "In *Bones vs. Bones, Prerog. Hilary Term,* 1801, this Court laid down, that it would not look nicely into the power of the wife, *as that right belonged to another Court;* and the Court, in that case, granted a limited probate."

Again: "The second objection is, that the codicil disposes of property not her own, because it was not given to trustees for her separate use. If I am at all required to give an opinion as to this point, I apprehend, that under the words of this will, *a Court of Equity, or any Court would decide* that she had a right to enjoy the property independently of her husband; *at all events, it is not necessary to decide this point; it is enough for this Court to grant its probate.*"

Let this example suffice. And if the Ecclesiastical Courts in England refuse to adjudge any other questions than probate or no probate, and leave the parties to litigate all other matters in the appropriate forums established for this purpose, the same course should be pursued by the Courts of Ordinary in this State. It may be, that the signature of Jesse Finch to this

agreement, was obtained by duress, or that he was a minor, when it was made.. It is iimmaterial what defence he may set up against its execution, the Court of Ordinary was not the proper tribunal, and from the very nature of its organization, could not be, for trying such issues. And as was said by Sir John Nicholl, in the case cited, perhaps if no probate were granted by this Court, Jesse Finch might be unable to relieve himself from this agreement, and recover the just portion of his father's estate, to which he is entitled.

But it is said, that this Court has decided, in *Vance vs. Crawford*, (4 *Ga. Rep.* 445) that a legatee who has received a legacy under a will, shall not be heard as a caveator against that will, until he has paid back the legacy. Consequently, it is insisted that Jesse Finch will not be allowed to propound the will of his father for probate, until he has returned the property distributed to him under the contract, with his co-heirs.

The two cases, we apprehend, are distinguishable. In Marshall Keith's will, the executors were cited to appear and prove the will in solemn form, it having been already proven in common form; and the complainants acquiesced for more than five years, having received legacies under it, and permitted the executors to go on in the execution thereof, without objection. There it was held, and no doubt very properly, that the petitioners would not be heard until they brought back or offered to do so, the legacies paid them, under the will as already proven. In other words, the Court of Ordinary having passed upon the *factum* of the will, would not, under the facts of the case made, permit that question to be re-examined.

But here, the Ordinary is called on for the first time, to pass upon the *factum* of the will of William Finch. And the application is resisted, for the reason that the propounder has received his share of the testator's estate, under and by virtue of an agreement, *dehors* the will, which he has entered into with the other children, for that purpose. The Court of Ordinary replies, with this extensive matter we have nothing to do—it belongs of right to another jurisdiction. All we can do is, to try whether or not this be the last will and testament

VOL. XIV. 47

of William Finch, deceased. The propounder takes nothing by the probate. He is merely placed in a condition where he can litigate the matters which are set up in bar of his interest, under the alleged will. Upon the first ground then, we reverse the judgment of the Court below, affirming it on the other two.

Judgment reversed.