## TRUSTEES OF THE UNIVERSITY OF GEORGIA
### *v.* DENMARK; *et vice versa.*

1. A devise which gives more than one third of testator's estate to any charitable, religious, educational, or civil institution, to the exclusion of the testator's wife or child, or descendant of child, is void under the Civil Code, § 3851:

   (*a*) A devise to the Trustees of the University of Georgia of certain prop-

erty, in trust for the use of the University, is a devise to the University itself.

(b) The University of Georgia is an educational institution, as represented by its trustees, within the meaning of the Civil Code, § 3851, which prohibits any person from devising by will more than one third of his estate to any charitable, religious, educational, or civil institution, to the exclusion of his wife or child, or descendant of child.

2. A court of ordinary in probating wills merely adjudicates the factum of the will—devisavit vel non—whether the paper propounded is or is not the last will and testament of the deceased; and this includes the legal execution of the will, the testamentary capacity of the testator to devise, and the presence or absence of undue influence, fraud, or mistake in the execution of the will, etc.

(a) The probate of a will by a court of ordinary is not an adjudication of the validity of a devise contained in any item of the will.

(b) The superior court, exercising equity jurisdiction, has authority to construe wills, and to declare devises contained therein void when contrary to law.

3. Where a will bequeathed to the wife of the testator a certain sum of money in lieu of dower and year's support, the acceptance of such sum by her would not prevent her from attacking the validity of a devise of more than one third of the testator's estate, by a separate item of the will, to an educational institution.

(a) Where a will contained an item of the character stated, the receipt by the wife, who was the life-tenant under the will, of the income arising from the estate did not estop her from attacking a devise of the remainder to an educational institution.

(b) A testator devised certain specific legacies. By a certain item of his will he then devised all the residue of his property to his wife and son, share and share alike. The share given to the wife was for her life or widowhood only, and from and after her death or marriage the same was to go to her son. The share of the son (that going to him at testator's death, and that going to him upon the death or marriage of his mother) was to be for his life only, and from and after his death to such child or children as he might leave surviving, share and share alike. If the son should die leaving no wife and no child or lineal representative of child or children surviving him, and if his mother should be living and unmarried, then she, as long as she lived and remained the widow of testator, should enjoy the entire income of testator's estate; and from and after her death or marriage, the son being dead without wife or child or lineal representative of child or children surviving him, the entire remainder of testator's estate was devised to the Trustees of the University of Georgia, an educational institution. If the son should die leaving a wife, but no child or the lineal representative of child or children surviving him, then his widow should enjoy one half of the net income from the estate bequeathed to the son, so long as she remained his widow, and immediately after her death or marriage, the testator's wife being dead or married, the entire remainder or corpus of the bequest to the son should go to the Trustees of the University of Georgia, under the terms

of this item of the will. The mother survived the son, who left no widow, child, or lineal representative of child or children surviving him. It was alleged that the value of the remainder estate thus devised was largely more than one third of the entire estate of the testator. *Held:* (*a*) Such devise is the giving by will of more than one third of testator's estate to an educational institution, to the exclusion of his wife and child. (*b*) So much of such devise as gives to the University the absolute remainder estate in property which would otherwise go to the widow is void.

FEBRUARY 23, 1914.

Equitable petition. Before Judge Charlton. Chatham superior court. August 26, 1912.

*W. E. Simmons, George F. Gober,* and *P. W. Meldrim,* for plaintiffs in error. *Anderson, Cann & Cann,* contra.

HILL, J. Brantley Astor Denmark died in 1901, testate, leaving his widow, the complainant in the court below, the defendant in error here, and one son, as his heirs at law. The will, together with two codicils, was probated on June 24, 1901, and Mrs. Anna R. S. Denmark, the widow, and the son, Thomas Norwood Denmark, and E. T. Comer qualified as the executors of the will. The son died, unmarried and without child, in 1906. Mr. Comer resigned as coexecutor. The Citizens and Southern Bank and George C. Freeman qualified as executors in their stead; and they, with the complainant, now constitute the executors of the will of the testator. By certain items of the will the testator bequeathed a number of specific legacies, which it is not necessary to set out, except that $5,000 each was given in fee simple to the wife and son of the testator (that of the wife being in lieu of dower and twelve months support, or any other claim of like character), and an equal amount to the Trustees of the University of Georgia upon certain named uses. This equitable petition was brought by the complainant as executrix and in her individual right, asking for a construction of the will and certain relief.

1. The case turns mainly upon the construction of the sixth item of the will of testator, the material portion of which is as follows: "I give, devise, and bequeath all of the rest and residue of my property of every nature and kind unto my beloved wife, Anna Rebecca Stark Denmark, and to my son, Thomas Norwood Denmark, share and share alike. The share herein given to my wife shall be for life or widowhood only, and from and after her death or marriage the same shall go to my said son, Thomas Nor-

wood Denmark; and the share of my son, that going to him at my death and that going to him upon the death or marriage of his mother, shall be for his life only, and from and after his death then to such child or children, share and share alike, as he may leave surviving, the child or children of a deceased child to represent the parent, and to take per stirpes and not per capita. If, however, my son should die leaving no wife and no child or no lineal representative of child or children him surviving, and if his mother should be living and unmarried, then and in that event my said wife, so long as she may live and remain my widow, shall enjoy the entire income of my estate, and from and after her death or marriage, my son being dead without wife or child or lineal representative of child or children him surviving as aforesaid, the entire remainder of my said estate I give, devise, and bequeath unto the Trustees of the University of Georgia, to be used in such manner and for such purposes for the benefit of said University as the said Trustees may deem best. If, however, my said son should die leaving a wife but no child or the lineal representative of child or children him surviving, then and in that event his widow shall enjoy one half (½) of the net income from the estate herein bequeathed to him, so long as she may remain his widow, and immediately from and after her death or marriage—my wife being dead or married—the entire remainder or corpus of the bequest to my said son shall go to the said Trustees of the University of Georgia under the terms of this item of my will." The petition prayed for a construction of the will. It is the contention of the widow that the remainder estate devised to the Trustees of the University of Georgia, under the above item of the will, is void, and, her son being dead without leaving surviving issue or widow, that she is entitled to the absolute estate; and she prays for an accounting by the executors, and for such relief as will invest her with an absolute estate, instead of a conditional income for life or during her widowhood. The petition shows that the testator left no heirs other than the widow and son, the latter being dead without leaving widow or issue. The defendants, the Trustees of the University of Georgia, demurred to the petition generally and specially. An amendment to the petition was filed, which was demurred to orally. The demurrer to the amendment was overruled as to the eleventh paragraph and sustained as to all the other paragraphs, which were

ordered dismissed as setting forth nothing appertaining to the merits of the case. On the demurrers to the original petition, the court overruled all the grounds of the special demurrer but one. On the general demurrer to the petition the court held, that inasmuch as item six of the will of the testator gives the Trustees of the University of Georgia the ultimate fee of that which would otherwise vest absolutely in the widow, so much of the will as gives it is void under section 3851 of the Civil Code. To these rulings the Trustees of the University of Georgia excepted.

The Civil Code of 1910, § 3851, provides: "No person leaving a wife or child, or descendants of child, shall, by will, devise more than one third of his estate to any charitable, religious, educational, or civil institution, to the exclusion of such wife or child; and in all cases the will containing such devise shall be executed at least ninety days before the death of the testator, or such devise shall be void." This code section has been construed several times by this court. The two leading cases are *Kine* v. *Becker,* 82 *Ga.* 563 (9 S. E. 828), and *Kelley* v. *Welborn,* 110 *Ga.* 540 (35 S. E. 636). The former case arose on the construction of a will executed on February 27, 1875. The testator died on March the 3d of the same year—within less than 90 days of the execution of the will. In that case the testatrix devised all her undivided half interest in the real and personal property of the estate of her late husband, and all other property, to her daughter during her natural life; and in case her daughter should marry and have issue or children at her death, then in fee simple to the children; or if she should die leaving no children, then to "whomsoever may be the Roman Catholic Bishop of Savannah, in trust for the erection of a Roman Catholic hospital in the city of Savannah, and for no other use or purpose whatsoever." It was held that this devise to the Roman Catholic Bishop of Savannah was void under the section of the code which is now § 3851 of our Civil Code of 1910. In delivering the opinion of the court Justice (afterwards Chief Justice) Simmons said: "The daughter was a single woman at the death of the mother. The question is, was she excluded from this property by the terms of this item of the will? It was argued by counsel for the defendant in error that she was not excluded, because the will gave her a life-estate in the property, remainder over to her children if she had any, and if she should die leaving no children,

then to the church. It was argued that this was not an exclusion of the daughter from the enjoyment of the property, but simply a restriction of the title. We can not bring our minds to this conclusion. Under the law of Georgia, if Ellen Kine, the testatrix, had died intestate, her daughter Mary would have been entitled to an absolute or fee-simple estate in this property. 'An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with the unconditional power of disposition during his life, and descending to his heirs or legal representatives at his death intestate.' Code, § 2246. This will, therefore, deprives her of a fee-simple estate in this property, and gives her only a life-estate therein. She is deprived of or excluded from one of the main ingredients in the ownership of property—the absolute title thereof. She is excluded from another right, and that is the power of disposition. Under this will, she can only enjoy the income of the property for and during her life. She has no right to the ownership of it except for her life, nor to dispose of it, except her life-estate in it. A bill having been filed for partition by the other tenant in common, and the property having been sold and converted into money under the decree of the court, it is doubtful whether she would be entitled even to the possession of the money now in the hands of the court. The court could require her to give a bond for its forthcoming at the time of her death, or could order it to be invested in real property if it should think proper to do so. And if the court should pass such an order, either by requiring her to give bond or requiring the money to be invested in realty, she would only be entitled to the income. The mother having died leaving a child, and having made this will within ninety days before her death, bequeathing this property to a charity in the event of her daughter's death without issue or children, to the exclusion of the daughter, we think that part of the will is void, under section 2419 of the code." In the *Kelley* case, supra, the will was executed more than ninety days before the death of the testator. There the testator devised more than one third of his estate, to the exclusion of his grandson, and the widow and sole heir of a deceased son of testator, for the purpose of building a church; and it was held that such devise was void under the code section under consideration, and that it was a bequest to a religious institution. In delivering the opinion of the court in this case, Mr. Justice Cobb

said: "The effect of the will was to exclude the child and grand-child entirely from participation in the estate, except to the extent of the insignificant legacies given to them in the third item. The effect upon the wife was to exclude her from a greater ownership in the property than a life-estate. . . It is clear, therefore, that the effect of the will is to exclude the wife from full participation in the property as an heir at law, and that as against the child and grandchild more than one third of the property is given to the church. Such being the case, the will can not pass the title into the church to the property in question." We think these cases are controlling here; and counsel for the plaintiffs in error ask, if we so hold, that we review and overrule them. It is insisted that the ruling in the *Kelley* case, that the giving of a life-estate to the wife, and thus depriving her of the remainder estate, was an "exclusion," can not be sustained by authority, and is repugnant to the statute of this State. Whatever may be the decisions of other States, based on statutes which vary from ours, in view of the language of our statute, the reasoning of these two decisions, and the length of time they have stood as a guide in the disposition of property, we decline to overrule them.

It was argued by learned counsel for the plaintiffs in error, who are also members of the Board of Trustees of the University of Georgia, that the University is the property of the State, and that its trustees are simply the representatives of the State, or officers, in the management and control of the University and its affairs; and as the testator had the power to make disposition of his property, and the trustees of the State University had the right to accept bequests under the Civil Code, § 6581, its rights and interests would be restrained and diminished if it is held that section 3851 applies to bequests to the University. It is also pointed out that "the State is not bound by the passage of a law unless named therein, or unless the words of the act should be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Civil Code, § 3. And this being so, they contend that as section 3851 does not name the State, the trustees are not within the terms or spirit of the law in question. It is further insisted that the reason and spirit of section 3851 are to guard against improper influences when the testator is in extremis (citing the case of *Reynolds* v. *Bristow,* 37 *Ga.* 283), and do not apply to a case

like the present. We are unable to bring ourselves to agree with counsel for plaintiffs in error in any of these contentions. We think that the University of Georgia falls within the description contained in § 3851 of the Civil Code, which prohibits a devise of more than one third of an estate to "any charitable, religious, educational, or civil institution, to the exclusion of such wife or child." As said by Judge Cobb in the *Kelley* case, supra, where the devise was to certain trustees for the purpose of building a church, "If this is not a gift to the church or institution itself, it would be difficult to find language which would be appropriate in making a bequest to a religious institution." And see In Re Ihmes' Estate, 154 Iowa, 20 (134 N. W. 429) ; Currin *v.* Fanning, 13 Hun (N. Y.), 458. The preamble to the act approved February 25, 1784 (Cobb's Digest, 1082), providing for the endowment of the State University, recites that "Whereas the encouragement of religion and learning is an object of great importance to any community, and must tend to the prosperity, happiness, and advantage of the same;" and the act then grants twenty thousand acres of land "of the first quality" for the "endowment of a college or seminary of learning." These lands were vested in and granted in trust "To His Honor the Governor, for the time being," and seven named trustees and their successors "for the college or seminary of learning." By an act approved January 27, 1785, entitled "An act for the more full and complete establishment of a public seat of learning in this State," it was declared that "As it is the distinguishing happiness of free governments that civil order should be the result of choice and not necessity, and the common wishes of the people become the laws of the land, their public prosperity and even existence very much depends upon suitably forming the minds and morals of their citizens. . . This is an influence beyond the stretch of laws and punishment, and can be claimed only by religion and education. It should therefore be among the first objects of those who wish well to the national prosperity to encourage and support the principles of religion and morality, and early to place the youth under the forming hand of society, that by instruction they may be moulded to the love of virtue and good order." The act then proceeded to create the "Board of Visitors" and the "Board of Trustees," which united should compose the "Senatus Academicus of the University of Georgia," which should at their stated annual meetings not only

consult and advise upon the affairs of the University, but remedy the defects and advance the interests of literature throughout the State. From the reading of these acts it is manifest that the legislature considered and intended that the University of Georgia should be an educational institution, and it was expressly provided that the trustees should not exclude any person of "any religious denomination whatsoever from free and equal liberty and advantage of education," etc. Certainly the object of the institution is educational. It was instituted for educational purposes. But the argument is that the code section under review does not include bequests to the State, as it is excepted from the operation of the law, and that this bequest to the Trustees of the University of Georgia is to the State. But we do not think that the bequest was to the State. The statute not only prohibits giving more than one third, to the exclusion of wife or child, to any charitable, religious or educational institution, but to any "civil institution." These words are broad enough to include any State institution, such as the Trustees of the University of Georgia. As was said In Re Royer's Estate, 123 Cal. 614 (56 Pac. 461, 44 L. R. A. 364): "The university, while a governmental institution and an instrumentality of the State, is not clothed with the sovereignty. . . As we understand the rule, it is only the sovereign that is exempt from the operation of the statutes affecting its interests or rights." The Trustees of the University of Georgia exercise none of the functions of government, as do the various civil officers of the State. The State can not be sued without its consent, but the Board of Trustees of the University of Georgia are created by law a body corporate "who shall and may be a person in law capable to plead and be impleaded," etc. The Trustees of the University of Georgia (Civil Code of 1910, § 1364) are not clothed with any of the attributes of sovereignty. They are not sovereign, as is the State. And it is only the State, as a soverign, which is exempt from statutes affecting her rights. In the case of *First District Agricultural School* v. *Reynolds,* 11 *Ga. App.* 650 (75 S. E. 1060), it was held: "The University of Georgia is expressly incorporated as a body corporate and politic, with the right to sue and be sued; and in creating these branch schools [agricultural and mechanical] it was the purpose of the legislature that they should stand in the same relation to the State and to the public in this respect as the university stood."

Hill, C. J., in delivering the opinion of the court, quotes section 1364 of the Civil Code, which provides: "All money or property granted by the State, or individuals, for the advancement of learning in general, is vested in such trustees." And see *Knight* v. *State,* 137 *Ga.* 537 (73 S. E. 825). From the foregoing it seems to us that the devise in the 6th item of the will was not to the State as a sovereignty, so as to exempt the devise from the operation of a statute which does not include the State, but the devise was to the Trustees of the University as above defined, and comes within the classes named in section 3851 of the Code.

2. It is contended that the superior court of Chatham county was without jurisdiction to try this case, and that the demurrer on this ground should have been sustained and the case dismissed. It is contended that the case of *Tudor* v. *James,* 53 *Ga.* 302, is in point, and that the same question as to jurisdiction was raised in that case, and that the decision in the *Tudor* case sustains the contention of the plaintiffs in error. In that case it was held that "The superior court, in the exercise of its chancery powers, has no jurisdiction to set aside a will which has been admitted to probate, or any clause thereof. Such jurisdiction is vested exclusively in the court of ordinary." The decision in the *Tudor* case was based upon the act of 1818, which was amendatory of the act of 1801, and by these acts the recording of any instrument setting free or manumitting any slave was prohibited. The portion of the will, therefore, which set free or manumitted any slave could not be probated or recorded, and, as said in the *Tudor* case, the prohibition placed on any court included the court of ordinary. The will of Tudor had been admitted to probate in that court; and this court held in a case of that kind that the superior court exercising chancery jurisdiction had no authority to set aside the will thus admitted to probate, but that the jurisdiction to do so was exclusively in the court of ordinary. The *Tudor* case has no application to a case like the present. If we had a statute which provided that no devise of more than one third of a testator's estate to a charitable, educational, religious, or civil institution, to the exclusion of his wife or child, should be probated or go to record. then the principle of the *Tudor* case would apply; but such is not the case. The *Tudor* case was decided merely upon the proposition as to whether there was a will or not. In the case

of *Drane* v. *Beall,* 21 *Ga.* 21, Judge Lumpkin (on page 45) brings out clearly the distinction between the present class of cases and the *Tudor* case. There it was said: "It has been earnestly pressed upon the court, that the ordinary in the first instance, and the superior court on appeal, may interpret wills. And this is the every-day practice, where no objection is made, as it seems to expedite litigation. Strictly speaking, however, and with but a limited exception, the jurisdiction of the ordinary is restricted to the factum of the execution of the will; as to emancipation clauses, it is made their duty, under the statutes, to go further, and pronounce upon their validity, and to grant or refuse probate accordingly. In all other cases, it is best to leave the rights arising out of wills to be contested in the proper court, by the proper parties, who are more immediately interested. It is conceded that in a vast number of questions originating under wills, none but a court of chancery is competent to determine, because that court alone can grant full and adequate relief. Clothe the courts of ordinary with jurisdiction beyond the factum of execution, and where will you limit it? What practically available line of demarkation can be drawn? This, to our mind, constitutes the most stubborn objection to the claim of power attempted in this case to be set up. Was it ever contemplated that the court of ordinary should sit in judgment upon the intricate doctrines involved in the 9th, 10th, and 25th clauses of this will? We think not." In *Finch* v. *Finch,* 14 *Ga.* 362, 367, it was said that the jurisdiction of the court of ordinary was confined to the factum of the will; and (citing the case of Sappenden *v.* Walsh, 1 Eng. Eccl. Rep. top p. 100) that the practice of the ecclesiastical courts of England was uniformly in accordance with this rule. In the case cited it was said by Sir John Nicholl, "The probate of this court does not decide upon the right of disposal; it decides merely upon the factum of the instrument." The opinion of Judge Lumpkin in the *Finch* case, supra, further states (page 368): "If the Ecclesiastical Courts in England refuse to adjudge any other questions than probate or no probate, and leave the parties to litigate all other matters in the appropriate forums established for this purpose, the same course should be pursued by the courts of ordinary in this State." In the case of *Wetter* v. *Habersham,* 60 *Ga.* 193 (7), it was held, that, "Where the executors are propounding an alleged will for proof in solemn form, the issue, and

the only issue, is devisavit vel non,"—whether the paper propounded is, or is not, the last will and testament of the deceased. And in *Thomas* v. *Morrisett,* 76 *Ga.* 384, Mr. Justice Hall said (p. 390) : "It was expressly decided in *Wetter, guardian et al.* vs. *Habersham et al., executors,* 60 *Ga.* 194, that where a will was properly executed by a person having testamentary capacity, the court should order it to probate and record, leaving all questions of construction and the fate of charitable or other particular bequests for action of the parties or future direction in the proper court, as the case may require. This is the deduction drawn in that case from the decision in *Reynolds* vs. *Bristow,* 37 *Ga.* 283, which was reviewed and affirmed by this court. In other words, this entire estate passes into the hands of the executor, and he is to administer it under the direction of the court having jurisdiction of the matter." And see *Wells* v. *Thompson,* 140 *Ga.* 119 (6), 126 (78 S. E. 824). From these authorities it seems clear that generally, when a will is offered for probate in a court of ordinary, there are only three matters for consideration : (1) the legal execution of the will; (2) the testamentary capacity of the testator; and (3) the presence or absence of undue influence, fraud, or mistake in the execution of the will. The construction of an item of the will and the question of the validity thereof is for some other forum. The probate of a will is merely conclusive of the factum of the will. The superior court of Chatham county, exercising equity jurisdiction, has jurisdiction of the petition in this case, and the power to construe the will and grant the relief prayed for under the facts alleged. Civil Code, §§ 4596, 4597.

3. Was the complainant in this case estopped from seeking the relief asked, by reason of the probating of the will, accepting benefits under it, or for something she has done or omitted to do? An executor must offer the will for probate as soon after the death of the testator as practicable. Civil Code, § 3868. It is the duty, therefore, of the executor to offer the will for probate and have the issue tried of devisavit vel non—whether the testator did devise or not. If there is any reason why the executor can not act, he ought so to declare. But when the will has been offered and probated—when the factum has been proved—as provided by law, then, as said in a previous division of this opinion, the ordinary has no power to declare any item of the will void, or to construe the will.

26

The mere probate does not adjudicate the rights of any legatee under the will, or any clause thereof. That is for some other court, under proper proceedings. This case is here on petition and demurrer thereto, and the former does not set forth any facts which show any estoppel against the complainant and which would preclude her from obtaining the relief sought. The statute makes invalid the estate in remainder, devised and bequeathed to the Trustees of the University. It does not declare invalid the life-estate devised and bequeathed to the wife, but leaves a valid life-estate in her. As life-tenant she was entitled to the income, and by accepting it she did not so elect as to estop herself from attacking the validity of the devise of the remainder.

After a careful consideration of the whole case, we conclude that so much of the devise in item six of the testator's will as gives to the Trustees of the University of Georgia the absolute estate in the property which would otherwise vest in the widow is void.

*Judgment on the main bill of exceptions affirmed. Cross-bill of exceptions dismissed. All the Justices concur.*