## McFARLAND et al. v. MORRISON.

1. Under the testimony introduced, there was no error in admitting the will in evidence over the objection that it was not shown that the paper about which the attesting witness was testifying was the same as the paper offered for probate.

2. The evidence was sufficient to make out a prima facie case of testamentary capacity upon the part of the testatrix.

3. The evidence as to the mental capacity of the attesting witness was sufficient to show the competency of the witness.

4. The verdict was supported by the evidence.

SEPTEMBER 15, 1915.

Probate of will. Before Judge Wright. Walker superior court. June 15, 1914.

*W. H. Payne, J. E. Rosser,* and *W. M. Henry,* for plaintiffs in error.

*Maddox & Doyal, R. M. W. Glenn,* and *Sizer, Chambliss & Chambliss,* contra.

ATKINSON, J. A will was offered for probate in solemn form. A caveat was filed on the following grounds: (a) The testatrix

did not execute the will freely and voluntarily, but was moved thereto by undue influence and persuasion. (*b*) The testatrix signed the will under a mistake, and did not understand the legal significance of her act. (*c*) The will was not signed by the testatrix in the presence of the attesting witnesses, nor was it signed by the witnesses in the presence of the testatrix. (*d*) One of the attesting witnesses was incompetent on the ground that he was non compos mentis at the time of signing the paper. On the trial in the superior court the will was introduced. It was executed on September 22, 1892, and contained the following items:

"I, Mattie Thomas, daughter of Thomas G. and Elizabeth McFarland, being of sound and disposing memory, do make this my last will and testament. After paying all my debts, I give my property as follows:

"All my interest in my father's estate on Lookout Mountain, including my individual interest in said lands and also all bequeathed to me there, including the one thousand dollars, I give and bequeath to my executor, to use in building a church here, in memory of my father and mother. Said church to belong to the M. E. Church South. I also give the lot belonging to me on the N. E. corner of McFarland Avenue and Lake Avenue, or street, to the M. E. Church South for a home to be built there as a parsonage.

"I give to John M. McFarland, my brother, the house (dwelling) I have built in the Apple Orchard Block, and the lot on which it is built, and all the lots I own in Apple Orchard Block; also my interest in the Lake and the lands adjoining the Lake, running from Lake Avenue south along McFarland Avenue (Crawfish Spring Road) to my south line and thence east to the lower side of my orchard that lies on the west side of Missionary Ridge, thence along the lower side of said orchard, running in a northernly direction to said J. M. McFarland land.

"To my brother, J. Anderson McFarland, I give two hundred dollars.

"To my husband, A. R. Thomas, I give twenty-five ($25.00) dollars, to make this will binding and legal; and I do not want him to have anything more in any way to me belonging, because of his continual unkindness to me.

"To my sister, Elizabeth Morrison, I give all my personal prop-

erty.· The remainder of my estate, I will that it be equally divided into four parts, and one part given to my brother T. Foster McFarland, one part to my brother John M. McFarland, one part to Elizabeth Morrison, and one part to Mary Lizzie and Wallace McFarland, the last named being the children of my brother, J. Anderson McFarland."

It was shown, at the trial, that two of the subscribing witnesses were dead. Their signatures were proved by the surviving witness, who testified by interrogatories to the effect that the will was signed in the presence of all the witnesses, who also signed in the presence of the testatrix and in the presence of each other, and that all of the witnesses were shown by the testatrix "where to write" their names. The witness also testified: "Her ability to make a will is not considered by me in making my answers." Another witness testified that at the time of her death the testatrix was residing at her home, and the witness and his wife were living with her. Some time before she died she told witness that "she had some valuable papers in her desk, and, if anything should happen, for me to get them; said she ought to have them in the bank in her deposit box. . . After her death I got them out. I have seen the papers you now exhibit to me. . . Saw them after her death in her desk. They were all in a bunch, and I got the whole bunch and found this paper [the will] you exhibit among them. . . The will is in Mrs. Thomas's handwriting." On cross-examination the witness testified that before the death of testatrix he looked after some of her business, and Foster McFarland, one of the caveators, who was the brother of testatrix, looked after most of her business. Testatrix "told me the reason she would not turn the whole business over to me, said it seemed everybody was down on Foster, and she had plenty to live on, and let him go ahead and collect the rent and keep account of it." Other than inferences that might be drawn from the foregoing, there was no evidence as to the mental condition of the testatrix at the time of signing the will. The burden of the evidence was as to the mental condition of one of the attesting witnesses, who it was urged had not sufficient mental capacity to become a competent witness. The jury returned a verdict setting up and establishing the will. The caveators made a motion for new trial, on the grounds that the verdict was contrary to law and to the

evidence, and was without evidence to support it. To these grounds was added another by amendment, complaining that the court erred in admitting the will in evidence over the objections: (1) There was no evidence showing the testamentary capacity of the testatrix. (2) The interrogatories propounded to the attesting witness referred to the will as "attached" to the interrogatories, and the answers referred to a paper attached to the interrogatories, whereas at the trial there was in fact no will attached to them, but the will which was offered for probate was produced from the pocket of one of the counsel for propounder, and it was not shown that the paper about which the witness was testifying was the same as that offered for probate. The motion for new trial was overruled, and the caveators excepted.

1. A witness at the trial testified, without objection, that the will produced in court for probate was taken by him to Indiana and exhibited to the attesting witness who testified in the case by interrogatories. The witness to whom the paper was thus exhibited testified, also without objection, that the will which was exhibited to her was the same which she had signed as an attesting witness, and that "the marks of recognition that are plain" to her "are the signatures of" the testatrix, one of the other subscribing witnesses, and her own signature. When this evidence is taken into consideration, there was no error in admitting the will in evidence over the objection that it was not shown that the paper about which the attesting witness was testifying was the same as that produced in court.

2. The other objection to the admission of the will in evidence raises the point that the paper could not be set up and established as the last will and testament of the testatrix, without affirmative proof of mental capacity to make a will. This point is also involved in the general grounds of the motion for new trial, which complain that the evidence was insufficient to support the verdict. This involved the questions of what is necessary to constitute testamentary capacity and what proof is necessary to show prima facie the existence of testamentary capacity on the trial of an issue of devisavit vel non. In *Slaughter* v. *Heath,* 127 *Ga.* 747 (57 S. E. 69, 27 L. R. A. (N. S.) 1), it was held: (*a*) "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect·after

death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." (*b*) "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done the burden of proof shifts to the caveator." See also *Edenfield* v. *Boyd,* 143 *Ga.* 95 (84 S. E. 436); *Brown* v. *McBride,* 129 *Ga.* 92 (2), 95 (58 S. E. 702). Applying these rules to the evidence set forth in the statement of facts, and giving due weight to all reasonable inferences to be drawn therefrom, the evidence was sufficient to make out a prima facie case of testamentary capacity upon the part of the testatrix.

3. The evidence as to the mental capacity of the attesting witness whose competency was assailed was sufficient to show that the witness was competent.

4. The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*