## PEAVEY *v.* CRAWFORD.

No. 11094. JULY 15, 1936.

*C. G. Battle,* for plaintiff.

*Fred L. Brewer* and *B. Frank Whelchel,* for defendant.

RUSSELL, Chief Justice.   On March 3, 1930, Martha D. Peavey filed in the court of ordinary of Dawson County a petition to probate in solemn form the will of Mary J. E. Crawford, who was alleged to have died on January 29, 1930, attaching a copy of the will to the petition.   The exact time when the caveat in this case was filed in the court of ordinary does not appear from the record, but it appears from the bill of exceptions that by consent the proceeding was appealed to the superior court.   The writ of error complains of the overruling of the propounder's motion for a new trial after verdict against the will.   The motion contains the three general grounds, and several special grounds added by amendment. In the state of the record we shall address our inquiry mainly to the question whether the verdict in this case is contrary to law.

The court of ordinary has original and exclusive jurisdiction of the probate of wills.   Code, § 113-603.   The law provides for an appeal to the superior court.   What does this appeal embrace? Does it take into consideration the rights of the legatees, heirs, and creditors inter sese, or is it confined entirely to the probate of the will, leaving all other matters as to inheritance and distribution for subsequent adjudication?   This court from its earliest history has held that in the proceeding to prove a will nothing else is in order in the court of ordinary, and that when an appeal is taken to the superior court the procedure of the ordinary's court attaches itself to the matter and follows it into the superior court. "As a general rule, an appellate court can not go beyond the jurisdiction of the primary court as respects rights.   It follows its own modes of trial and procedure to ascertain those rights, but does not determine and adjudicate other rights wholly outside the power of the lower court."   *Greer* v. *Burnam,* 69 *Ga.* 734.   Upon the same principles, Chief Justice Bleckley in *Hufbauer* v. *Jackson,* 91 *Ga.* 298, 301 (18 S. E. 159), said:   "We are clear that as the suit went by appeal from the county court to the superior court, the jurisdiction of the latter over it, as to subject-matter, was no larger than was the jurisdiction of the former; and it is certain that a county court could not, upon an equitable plea, or upon any other pleading, determine and control the title to land, or confirm a sale made by a trustee and fix title in the purchaser, by mere

force of the adjudication. In trying an appeal from a county court, the superior court can deal with no question of merits except such as could have been raised in the county court, and can render no final judgment except such as the county court had jurisdiction to render."

In *Finch* v. *Finch,* 14 *Ga.* 362, it was held: "The Civil and Canon Law, governing the proceedings in the Ecclesiastical Courts in England, in relation to testamentary causes, is the law of our courts of ordinary, upon similar questions." And in *Trustees* v. *Denmark,* 141 *Ga.* 390 (81 S. E. 238), Mr. Justice Hill, delivering the unanimous opinion of the court, quoting from Judge Lumpkin in *Drane* v. *Beall,* 21 *Ga.* 21, said: "'Strictly speaking, however, and with but a limited exception, the jurisdiction of the ordinary is restricted to the factum of the execution of the will. . . In all other cases it is best to leave the rights arising out of wills to be contested in the proper court, by the proper parties, who are more immediately interested. It is conceded that in a vast number of questions originating under wills, none but a court of chancery is competent to determine, because that court alone can grant full and adequate relief. Clothe the courts of ordinary with jurisdiction beyond the factum of execution, and where will you limit it? What practically available line of demarkation can be drawn?'" In the *Denmark* case this court further said: "In *Finch* v. *Finch,* 14 *Ga.* 362, 367, it was said that the jurisdiction of the court of ordinary was confined to the factum of the will; and (citing the case of Sappenden *v.* Walsh, 1 Eng. Eccl. Rep. top p. 100) that the practice of the ecclesiastical courts of England was uniformly in accordance with this rule. In the case cited it was said by Sir John Nicholl, 'The probate of this court does not decide upon the right of disposal; it decides merely upon the factum of the instrument.' The opinion of Judge Lumpkin in the *Finch* case, supra, further states (page 368) : 'If the Ecclesiastical Courts in England refuse to adjudge any other questions than probate or no probate, and leave the parties to litigate all other matters in the appropriate forums established for this purpose, the same course should be pursued by the courts of ordinary in this State.' In the case of *Wetter* v. *Habersham,* 60 *Ga.* 193 (7), it was held, that, 'Where the executors are propounding an alleged will for proof in solemn form, the issue and the only issue is devisavit

vel non,'—whether the paper propounded is, or is not, the last will and testament of the deceased." Further in the *Denmark* case this court again said: "But when the will has been offered and probated—when the factum has been proved—as provided by law, then, as said in a previous division of this opinion, the ordinary has no power to declare any item of the will void, or to construe the will. The mere probate does not adjudicate the rights of any legatee under the will, or any clause thereof. This is for some other court, under proper proceedings."

In *Field* v. *Brantley*, 139 *Ga.* 437 (77 S. E. 559), it was held: "If undue influence is relied on to impeach a paper propounded as a will, the facts constituting such undue influence must be alleged. A general averment that the propounders and a legatee influenced the testator to make the will presents no issue of undue influence. . . The subscribing witnesses testified that the will was executed with the formality which the law requires, and that the testatrix was of sound and disposing mind and memory; and their testimony not being controverted, it was proper to direct a verdict probating the will." In the *Field* case Mr. Justice Evans said: "It is set up in the caveat that in breach of the contract between the children, and for their own use and advantage, the propounders and Mrs. Brantley caused and influenced Mrs. Camp to sign the alleged will. This allegation, even as against a general demurrer, is insufficient to raise an issue of undue influence such as will void a will. The undue influence over a testator's act, which invalidates his testamentary power, must go to the extent whereby the will of another is substituted for the wishes of the testator. Civil Code, § 3834. It is one of the oldest maxims of pleading that every pleader is presumed to state his case as favorably to himself as he can do. It is also one of the fundamental rules of pleading that facts and not legal conclusions must be alleged. If fraud is relied on to vitiate an act, the particular facts constituting the fraud must be stated, and a general charge of fraud may be assailed by general demurrer. *Kilgo* v. *Castleberry*, 38 *Ga.* 512 (95 Am. D. 406). Undue influence is the handmaiden of fraud, and good pleading requires an averment of the facts relied on to constitute it. The general principle of pleading is applicable to pleadings to contest the probate of wills, and the general rule is to set forth the facts con-

stituting fraud or undue influence in a proceeding to contest a will upon these grounds. 16 Enc. Pl. & Pr. 1022, and cases cited in notes. In the instant case there is not even a distinct allegation that the will was obtained by undue influence, and the facts alleged do not constitute undue influence."

In the case at bar all the attesting witnesses were produced and all testified to the fact that Mary J. E. Crawford, requested them to attest her will (the paper she requested them to sign), and that they attested her signature, and that she was of sound and disposing mind and memory. There was further testimony that she recovered and lived for almost a year after she executed the will, and was in the possession of all her faculties, and was in full charge and superintendence of her large plantation. Construing the grounds of the caveat, as we must, adversely to the pleader, they amount to nothing more than that Mary Crawford and Ida Seine, daughters of the testator, exerted constant and undue importunities, and thus forced her to sign the will in order to obtain quiet. This court has frequently held that to request or even to importune one to make one the beneficiary is not necessarily the exertion of undue influence. *DeNieff* v. *Howell,* 138 *Ga.* 248 (6) (75 S. E. 202); *Burroughs* v. *Reed,* 150 *Ga.* 724 (105 S. E. 290); *Ricketson* v. *Ricketson,* 151 *Ga.* 540, 544 (107 S. E. 522); *Ward* v. *Morris,* 153 *Ga.* 421 (3) (112 S. E. 719); *Galloway* v. *Hogg,* 167 *Ga.* 502, 524 (146 S. E. 156); *Benjamin* v. *Weintraub,* 169 *Ga.* 770, 777 (151 S. E. 381).

In *Edenfield* v. *Boyd,* 143 *Ga.* 95 (84 S. E. 436), in which the caveator prevailed in the lower court, as the caveators have prevailed in the present case, and the judgment of the lower court was reversed, as the propounder here seeks to have this judgment reversed, Mr. Justice Atkinson, delivering the opinion of the court, said: "Considered separately, the facts that the testator was an old man, that he married a second time, that he disinherited some of his children, that by his will he had unequally distributed his estate among his children, that there were unfriendly feelings among the members of the family and an estrangement between the children and their stepmother, would be insufficient to show such influence over the mind of the testator as would invalidate the will. Accordingly it was erroneous, after telling the jury that they might consider all the facts and circumstances connected with

the life of the testator at the time of executing the will, and all that would throw light on the transaction, and referring to the several things above mentioned, to charge that 'if from the existence of any of these facts' the jury should determine that there was undue influence brought to bear upon the mind of the testator at the time of making the will, and it influenced him to make it, they would be authorized to find in favor of the caveators." In the *Edenfield* case the court ruled: "Where it appears that the caveators were two daughters and certain heirs of a deceased daughter, children of the testator by a former marriage, to whom nominal sums of money were devised by the will, and that the residue of his estate was devised approximately equally between a number of other children by the first marriage and the second wife, by whom there were no children, thus showing that the will mentioned all of the members of the family of the testator, and a ground of attack upon the will by the caveators was that of undue influence over the testator, and there was no evidence that any of the children or representatives of deceased children had in any manner attempted to exercise any influence over the testator, and the only evidence relied on to show undue influence was alleged conduct and requests upon the part of the second wife, it was not strictly accurate for the court, while instructing on the subject of undue influence, to charge that 'it is immaterial who might bring this mental condition upon the maker of the will.'"

In the case at bar the testatrix, similar to the testator in the *Edenfield* case, was the mother of a large family, and there is no charge in the caveat that any of them sought to exert any influence, except two daughters, Mary Crawford and Ida Seine, and the record does not disclose that either of these was present at the time of the execution of the will. The stress of the caveators' case seems to rest upon the fact that the testatrix, their mother, left them only one dollar. This is not enough to invalidate the will. One case in illustration may be cited. *McFarland* v. *Morrison*, 144 *Ga.* 63 (86 S. E. 227). The court erred in overruling the motion for new trial; for the legal evidence demanded a verdict probating the will, and the verdict rendered was contrary to law.

*Judgment reversed. All the Justices concur.*