## SCHAEFER *vs.* THE GEORGIA RAILROAD.

1. Where witnesses substantially answer cross-interrogatories, either by immediate responses or by reference to certain answers to direct interrogatories, their testimony will not be suppressed because the cross-interrogatories are not more fully answered.

2. In a suit against a railroad for loss of goods shipped over its line, it was competent for the defendant to prove by the agent of a connecting road delivery in good order to it; and although the witness may never have seen the goods, he may testify from the books of his company, the entries having been made by him in the usual order of business, and the books having been proved to be accurate.

3. When a writing is shown to be lost or beyond the jurisdiction of the court, secondary evidence of its contents is admissible.

Railroads. Evidence. Interrogatories. Practice in the Superior Court. Before Judge CLARK. City Court of Atlanta. June Term, 1880.

Reported in the decision.

M. J. CLARKE, for plaintiff in error.

HOPKINS & GLENN, for defendant.

SPEER, Justice.

This is a suit brought by the plaintiff in error against the defendant as a common carrier, to recover the value of fifteen bales of cotton. Plaintiff alleges that on the 9th of September 1876, he delivered to defendant, at Atlanta, fifteen bales of cotton, marked H. V. V., valued at $1,000 00, to be carried from thence to Baltimore, and there to be delivered to A. C. Shaefer, Jr. That it did not so carry and deliver said cotton, but conducted itself so carelessly and negligently in the premises that it entirely failed to deliver said cotton to the consignee. The following is a copy of the contract sued upon.

OFFICE OF THE GEORGIA R. R. CO.,  
ATLANTA, GA., Sept. 8, 1876.

Received by the Georgia Railroad of George Schaefer, in good order, the following named articles, marked as per margin below, which we engage to deliver in like good order and condition at Baltimore, the unavoidable accidents of the railroad, fire in the depots, and dangers of the sea and steam navigation of what nature and kind soever excepted, unto A. C. Schaefer, Jr., he or they paying the freight for the same at the tariff rate of said railroad company, 95 cents per 100 lbs charges. Railroad not responsible for damages by fire after cotton is discharged from cart at ———

| Names. | Articles. | Weight. |
| --- | --- | --- |
| H. V. V. | 15 Bales Cotton. | 6401. |

(Signed)         JOHN J. DOWAN,  
*Freight Agent.*

There was testimony on the part of the plaintiff that Dowan, who signed the contract above set forth, was the

agent of defendant (being cotton clerk), also by the consignee that the cotton had never been received by him. The value of the cotton was proven, and plaintiff closed. The defendant proved that the cotton was duly delivered by it to the South Carolina Railroad at Augusta; that it was duly received at Charleston; thence loaded on the steamer Rebecca Clyde, and the loss of that steamer with all her cargo on her voyage out. On the trial of said cause under the charge of the court, a verdict was rendered for the defendant, and plaintiff made a motion for a new trial, upon various grounds, which were overruled, and plaintiff excepted.

1. The first ground of alleged error is, that the court overruled certain exceptions made by plaintiff to the execution of the interrogatories of C. D. Bateman and P. C. Trenholm, upon the ground that those witnesses had not fully answered the cross-questions propounded by plaintiff in said interrogatories.

We have carefully examined the questions and answers complained of, both as to C. D. Bateman and to P. C. Trenholm.

Bateman "testified'" that he is the agent of the South Carolina Railroad Company, and was in September, 1876. That it was a part of his duty to attend to forwarding cotton going beyond Charleston. He testified to the reception of the fifteen bales of cotton marked H. V. V., to be forwarded to A. C. Schaefer, Jr., Baltimore, and that said cotton was delivered on the twelfth day of September, 1876, to steamer Clyde. He attaches a paper as part of his answers, which he swears is a true copy of the entry on the manifest which he gave Trenholm, the agent of the Clyde. The paper attached shows the shipment of fifteen bales of cotton marked "H. V. V., weight 6401 pounds, consignee A. C. Schaefer, Jr., Baltimore, by steamer Rebecca Clyde." On the cross-examination of this witness, he is asked whether "he ever saw this cotton,

its marks and number of bales?" " Whether he knows of his *own personal* knowledge that said cotton reached Charleston or was placed on steamer?"

To these interrogatories witness answers: "He has no recollection of seeing the cotton, but is perfectly satisfied that it was received here and shipped by the Clyde as stated in his replies to the interrogatories in chief." It has been held by this court that cross-interrogatories are sufficiently answered, "where the witness answers them according to a reasonable understanding of their meaning and object." 8 *Ga.*, 421. So "when interrogatories are *substantially answered*, the deposition of the witness will not be excluded because the answer to the cross was not more full." 14 *Ga.*, 242. " It is also true that a cross-question may be answered by reference to answers already made to the direct interrogatories." 17 *Ga.*, 558. Tested by these rules, we think the answers to the first, second and third cross-interrogatories are embraced by the answer the witness gives to the three combined. "He says he has no recollection of seeing the cotton," and this involves the fact he did no see either " marks " or " number of bales." And as to his personal knowledge of it reaching the Clyde, he refers to his direct answers, which, in connection with his cross-answers, show he is testifying from records and entries made at the time by himself, touching this cotton, and not from his own *individual* or personal knowledge.

The next four cross-interrogatories are seeking the sources of his information as to the facts recited in his direct answers. Again he replies that " he is satisfied the work of his office is accurate, though done by subordinates." " That the cotton was disposed of as already testified," but "only knows of the loss of steamer by rumor." A careful examination of the testimony of this witness, as well as that of Mr. Trenholm, the agent of the lost steamer Clyde, satisfies us that their testimony touching the receipt at Charleston, and shipment of this cot-

ton on board the steamer, is necessarily derived, not from their *personal knowledge* of and recollection of these identical fifteen bales of cotton, but from their inspection of and thorough conviction of the accuracy of records they made at the time touching this cotton in the regular course of business, and whose accuracy they verify under oath, and attach copies of such records to their answers. As to the sufficiency of these answers and rules touching the same, see 14 *Ga.*, 242; 8 *Ib.*, 421; 28 *Ib.*, 189; 32 *Ib.*, 546; 41 *Ib.*, 117; 49 *Ib.*, 31; 59 *Ib.*, 484.

2. It is made a ground of objection to the testimony of both of these witnesses, that by the cross–interrogatories it was shown to be "hearsay," and, therefore, not admissible, and this is made a ground in the motion for a new trial; also, it is further objected that "the exhibits" attached and verified by the witnesses to their answers (referred to), showing the delivery of said cotton on board the steamer Clyde, being a portion of "its manifest," was also hearsay, and the same not admissible as evidence to the jury."

And hence arises the question whether these "sources of information" from which this testimony of these witnesses is derived, are such as are recognized as legal and competent evidence for the jury under the facts of this case. For if it is and the court so rules, then the verdict could not have been otherwise than for the defendant.

In the 13th *Ga.*, 496, in a suit brought upon an account in favor of Fielder Brothers & Co. against William E. Collier, to recover of him the difference between the advances on 57 bales of cotton shipped to plaintiffs, and the net amount of sales thereof made by them in his behalf, plaintiff offered the depositions of his witnesses "to prove the sale of the cotton, expenses incurred," etc. Counsel for the defendant objected because the witnesses stated *that they derived* their information relative to the matter about which they swore from the *books, documents, accounts and vouchers of the plaintiffs.*"

Judge LUMPKIN, in discussing the admissibility of this

v 66—3

testimony, says : "Shall this proof be received or shall the plaintiffs be compelled to go *behind the books* thus verified by the clerks who kept them, and resort to each of the sub-agents who participated in the transaction and sale of this produce. Are not the entries thus made in the usual course of business of this extensive trading establishment, *and as a part of the proper employment* of the witnesses who prove them, not only the best, but the *only reliable evidence* which it is practicable to procure. We have no hesitation in holding that propriety, justice and convenience require it to be admitted. The weighers, wharfingers and numerous subordinates who handle this cotton keep no books. It is not reasonable to suppose that they can remember the multitude of transactions thus occurring every day. After a lapse of a very brief period the clerks themselves could only call to mind what had been done by referring to their entries and memoranda. The actual salesmen in none of these great wholesale stores keep the books. They report to the clerks who stand at the different desks and they make entries, and yet these books are always received to prove the sale and delivery of goods ; any other rule would involve enormous expense as well as inconvenience, and would in the end be productive of no practical benefit." How strikingly applicable are these suggestions and reasons to the case at bar. Here a corporation, engaging as a common carrier, shipping millions in value of produce yearly, if it could not be allowed to show by the verified and uncontradicted records of other connecting lines the disposition and delivery of produce or other articles entrusted to its care—records made, too, that go to charge the companies whose agents make them—then the inconvenience, confusion and responsibility resulting would be incalculable. The "conclusions" given by the witnesses in their testimony and which are made a ground of error, the court carefully instructed the jury upon and withdrew them from their consideration.

As to the exhibits, " A. and B.," attached to the evi-

dence of Bateman and Trenholm, and which they verify "as correct copies"—they were the certified copies of the freight list furnished to the steamer, and the steamer's "manifest"—showing the delivery of these fifteen bales "to the steamer," with identical marks and weights and with same consignee as are claimed to have been shipped by plaintiff. The originals, if they exist, are beyond the limits of the state—one of them destroyed in the loss of the vessel, and hence these copies are admissible. 6 *Ga.,* 188 ; 26 *Ib.;* 537 ; 12 *Ib.,* 496.

After carefully reviewing this record we can see no reason to disturb this verdict, and the judgment is therefore affirmed.