## Jim Howard and Harry Porter v. Commonwealth.

(Decided January 29, 1918).

### Appeal from McCracken Circuit Court.

1. **Criminal Law—Homicide—Evidence—Question for the Jury.—**On a prosecution for homicide, evidence examined and held that the question whether one of the defendants as principal and the other as aider and abettor were guilty of murder or manslaughter, or were entitled to an acquittal on the ground of self defense or for the defense of each other, was for the jury.

2. **Witnesses—Examination of Witness—Recalling Witness—Correction of Testimony—Abuse of Discretion.—**Where on a trial for homicide, a witness for the Commonwealth was examined and stated that one of the defendants had made no remark about a policeman, it was not an abuse of discretion on the part of the trial court to permit the witness to be recalled for the purpose of correcting his testimony and to state that the defendant had said that he intended to kill a policeman, though it appeared that since his original examination he had been in consultation with the Commonwealth's Attorney and his memory had been refreshed.

3. **Criminal Law—Appeal and Error—Review.—**Under section 340, Criminal Code, the Court of Appeals is not at liberty to reverse a judgment of conviction unless upon a consideration of the whole case, it is satisfied that an error prejudicial to the substantial rights of the defendant, has been committed.

BROWNING & KRONE for appellants.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In the month of September, 1917, the grand jury of McCracken county, indicted Jim Howard, Harry Porter, George Napper and Charley Lee Hill for the murder of Will Romaine. The indictment contains four counts. The first count charges that the four defendants jointly killed Romaine. The second count charges that Jim Howard did the killing and that the other three defendants were accessories before the fact. The third count charges that Jim Howard did the killing and the other three defendants were present aiding and abetting him in the commission of the offense. The fourth count charges a conspiracy between the defendants and the commission of the murder pursuant to that conspiracy.

The motion of George Napper and Charley Lee Hill for separate trials was sustained. The Commonwealth then elected to try Jim Howard and Harry Porter first. The jury found them guilty and fixed the punishment of Jim Howard at death, and that of Harry Porter at imprisonment for life. Judgment was entered accordingly and they appeal.

Only two grounds are urged for a reversal: (1), the verdict is not sustained by the evidence; (2), the court erred in permitting the witness, Joe Bennett, to be recalled and to testify to a fact in contradiction of his former testimony.

The evidence for the Commonwealth developed the following facts: Jim Howard, Harry Porter, George Napper, Gladys McFadden and Frank Donaldson, left a dance hall known as the "Divy," and then proceeded to Caldwell and Ninth Streets in Paducah. While there they were joined by Hill. They had a drink or two of gin and were laughing and talking. While there, Romaine and another officer approached the party. Before reaching the party the other officer turned back. Porter went into a house to borrow a guitar, but did not get it. About this time Romaine overtook the crowd and said: "You boys had better get in. If you don't, I will have to carry you down." The crowd then went to the railroad crossing when Donaldson looked around and said, "Here comes the officer and I am going on because I don't want to get arrested." Someone said, "Lets wait and see what he wants." Romaine then appeared and addressing Jim Howard, said: "I want you to stay off my beat. I told you to stay off my beat." Howard replied: "As long as I ain't doing nothing I got a right to stay up here." Then Romaine said to George Napper, "I want you, too, to stay off my beat." George said "All right." Then addressing Jim Howard again, Romaine said, "I will carry you to town now, you talk so big." Howard replied, "I ain't doing nothing and I am going to stay up here until I get ready to go." Then Romaine said, "I will carry you down now." Romaine then drew his pistol and according to Donaldson, Harry Porter threw his arms around Romaine, and knocked the pistol down. Howard then fired three shots. When Porter grabbed Romaine, he said, "Don't shoot my brother, that is my brother." Donaldson gave to the jury a practical illustration of how Porter took hold of Romaine. The of-

ficer fell and the crowd left. According to Gladys Mc-Fadden, Porter walked up behind Romaine and grabbed him just that way (indicating) and threw his hands down and then Jim Howard shot Romaine. According to the evidence of Charley Lee Hill, Romaine said, "You will have to stay off my beat. Every time you come up here, you raise a disturbance." Howard said, "I don't have to stay from here because I live up here, and I will come up here when I get ready." Romaine said, "If you don't stay away, I will ride you." Howard said, "You ain't got no right to ride me, I ain't done nothing." Howard then backed off and Romaine said, "I will ride you." Romaine then pulled his gun and Porter caught his hand, and Howard shot him. When Howard and Porter were brought before the Police Judge, Porter accused Howard of being the man who killed the policeman, whereupon Howard said, "Well did he tell you what part he played in it too?" It was further shown that while the chief of police was bringing Howard and Porter from Mayfield to Eddyville, Porter said Howard shot Romaine, while Howard stated that Porter grabbed Romaine's hands and held them. Joe Bennett testified in answer to several questions that he did not hear Jim Howard say anything about a policeman. After other witnesses were examined, Bennett was recalled and permitted to testify in substance that shortly before the homicide Howard said that he was going to kill Romaine if he got a chance. In explanation of the change in his testimony, he said, "They recall my memory back to it." When asked who reminded him of it, he said, "I was speaking to that gentleman there" (pointing). It developed, however, on cross-examination, that Howard merely said, "I am going to kill a policeman tonight," and witness did not know then of whom he was talking.

Jim Howard testified in substance as follows: Romaine, after saying, "I told you negroes I wanted you to go home and quit all this racket," said to Howard, "I told you to stay away from here anyway." Howard said, "Mister I am not doing anything, I am not cutting up." Romaine said, "If that is the case, you won't get to cut up none. I told you to stay away from here." Romaine then drew his pistol on him and Porter grabbed him and witness shot. Witness was scared and shot Romaine to protect his own life. Previous to that time he had not had any trouble with Romaine. Witness shot

three times, once as soon as Romaine drew his pistol and twice after Porter had hold of his hand. According to the evidence of Porter, Romaine said to Howard, "Negro, I thought I told you to stay away from up here." Jim said, "I ain't doing nothing, I live up here." Romaine then said, "Well you will stay away from up here, and threw his pistol up that way" (indicating). Witness caught hold of his hand that way (indicating), and Howard shot him. After Howard fired the shots, witness wrung the pistol out of the policeman's hands. At the time he didn't know that Howard was going to shoot the policeman but was afraid the policeman would kill him.

It is argued for appellants that aside from the statement of Joe Bennett which was inadmissible, the evidence did not justify a conviction of murder. In support of this position, the point is made that all the evidence goes to show that the killing was done either in self-defense or in sudden heat and passion or in sudden affray and without previous malice. For reasons hereinafter referred to, we think the evidence of Joe Bennett was properly admitted. It must also be remembered that malice in the sense of hatred or malevolence toward the deceased, is not necessary to be shown in order to support a verdict of murder. On the contrary malice means the intentional doing of a wrongful act toward another without legal justification or excuse, and malice aforethought means a predetermination to kill without legal justification or excuse; it being immaterial at what time before the homicide such determination was formed; and such malice may be inferred from the circumstances attending the homicide. Fields v. Commonwealth, 152 Ky. 80, 153 S. W. 29. Taking into consideration Porter's prior statement that he intended to kill a policeman, and the further fact that Romaine, the policeman who ordered the negroes off his beat shortly before the homicide, coupled with circumstances tending to show that Romaine drew his pistol merely for the purpose of effecting the arrest and not for the purpose of shooting either of the appellants, and that Porter held Romaine's arms and Howard fired the shots, when neither he nor Porter believed and had reasonable grounds to believe that either was then in danger of death or great bodily harm at the hands of Romaine, it was for the jury to say whether Howard as principal and Porter as aider and abetter, were guilty of murder or manslaughter, or were entitled to an ac-

quittal on the ground of self-defense or the defense of each other.

But it is argued that in as much as Joe Bennett stated two or three times on his first examination, that Howard did not make any remark about a policeman, it was error for the court to permit Bennett to be recalled after he had been in consultation with the Commonwealth's attorney, and testify that Howard stated that he intended to kill a policeman. The rule that it is within the sound discretion of the trial court to permit a witness who has theretofore been examined, to be recalled for the purpose of making a correction in his testimony, is generally recognized and approved by the courts, State v. Mays, 24 S. C. 190; Walker v. Walker, 14 Ga. 242; Jesse v. State, 20 Ga. 156; Moses v. Ela, 43 N. H. 557, 82 Am. Dec. 175; Mims v. State, 153 S. W. (Texas) 321; and we perceive no good reason why this rule should not apply to a witness for the Commonwealth merely because in the meantime he has been in consultation with the Commonwealth's attorney. This circumstance and the fact that he testified to the contrary on his original examination, affected only his credibility as a witness, and were therefore matters to be considered solely by the jury in determining what effect should be given to his testimony. Here it clearly appears from Bennett's testimony that the mistake in his former testimony had been called to his attention and that he desired to correct the mistake. Under these circumstances the trial court did not abuse its discretion in permitting him to be recalled and to testify for that purpose.

Under our code and the repeated decisions of this court, we are not at liberty to reverse a judgment of conviction in a criminal case, unless upon a consideration of the whole case, we are satisfied that an error prejudicial to the substantial rights of the defendant has been committed. Criminal Code, section 340; Overstreet v. Commonwealth, 147 Ky. 471, 144 S. W. 751. In this case no such error appears, and it therefore follows that the judgment must be affirmed and it is so ordered.

Whole court sitting. Judge Sampson dissenting.