GALLOWAY *et al. v.* HOGG, executor.

No. 6797.   December 14, 1928.

510

*F. A. Irwin* and *W. H. Trawick,* for plaintiffs in error.

*W. W. Mundy, W. K. Fielder,* and *C. C. Bunn,* contra.

HINES, J. ■ The court charged the jury as follows: "The

mere request by a person of one who contemplates making a will to make it a certain way does not invalidate it if it goes no further. Urgent suggestions that a will be made a certain way does not invalidate it. The pressure brought upon a person who contemplates making a will to make it in a certain way must be such as to overcome the will of a party and to destroy their freedom of action, and cause them to make it in the manner urged by such person, and the will must be the will of the person urging it to be made in a certain way." Caveators except to this instruction as a whole, upon the ground that it does not correctly state the law with regard to undue influence, and because it is argumentative and stresses unduly the contentions of the executor in this case. They object particularly to the language, "Urgent suggestions that a will be made in a certain way does not invalidate it," upon the ground that the testatrix was old and feeble in health, and under such circumstances urgent suggestions on the part of her pastor to make a will which made her church a beneficiary may have amounted to the undue influence and the over persuasion which would invalidate a will. "The very nature of a will requires that it should be freely and voluntarily executed; hence anything which destroys this freedom of volition invalidates the will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator." Civil Code (1910), § 3834; *Franklin* v. *Belt*, 130 *Ga.* 37 (60 S. E. 146). Undue influence, to invalidate a will, must amount to force or fear—must, in effect, make the will the mental offspring of some other person, and must be operative on the mind of the testator at the time the will is executed. It must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse. *Potts* v. *House*, 6 *Ga.* 324 (50 Am. D. 329); *Morris* v. *Stokes*, 21 *Ga.* 552; *Thompson* v. *Davitte*, 59 *Ga.* 472; *DeNieff* v. *Howell*, 138 *Ga.* 248, 251 (6) (75 S. E. 202). Applying the above principles the above instruction as a whole is not erroneous. The language, "Urgent suggestions that a will be made in a certain way does not invalidate it," must be construed in connection with what follows it; and so construed, it means that urgent suggestions made by one to induce another to make a will do not invalidate the same, unless the effect of such suggestions is to sub-

stitute the will of the person making them for the wishes of the testator. When considered and construed in connection with the context, the instruction excepted to is not erroneous. The court did not thereby instruct the jury that they could not consider the age and state of health of the testatrix, and any such suggestions, in determining whether the will was freely and voluntarily made or was made under influence exerted over her to induce her to make it.

■ The court charged the jury as follows: "Before you come to this question [of undue influence], if you believe, considering the evidence pro and con, if you believe that Mrs. Lindsey had such strength of mind and understanding as the law provides, as to the extent of her property and the situation of those to whom it would actually go, if she had that strength of intellect and understanding as to the disposition of her property, then this becomes her will and should be established as her will." Caveators except to this instruction, for the reason that it eliminated entirely the question of undue influence. The grounds of caveat being lack of mental capacity to make a will and undue influence in procuring it, this charge entirely eliminated from the consideration of the jury the question of undue influence, the court instructing them, in effect, that if they believed that the testatrix had such strength of mind as to understand the extent of her property and the situation of those to whom it would actually go, then this instrument became her will, and should be established as such. If the evidence was sufficient to raise the issue of undue influence, this instruction was erroneous, because it eliminated from the consideration of the jury the question of undue influence. There was evidence which required the submission to the jury of the existence of undue influence vel non.

■ The court charged the jury as follows: "As to persuasions and influences brought on her to cause her to make a will different from the one she actually wished to make, you take into consideration the entire situation, the mental capacity of the party, the surroundings, and all these things; and if, as I say, you find that she had this mental capacity and understanding, knew about her property, what she had, knew the effect of the will, knew its effect upon her relatives, these caveators, if you believe that she had strength of mind to understand these things and she desired to

make this will as it was made, then you would not go any further but you would establish it as the will." Caveators except to this charge, upon the ground that it excluded from the consideration of the jury the ground of their caveat that the instrument was procured by undue influence. This instruction did not eliminate from the consideration of the jury the question of undue influence raised by the caveat, and was not erroneous.

The court charged as follows: "The jury has no right to determine a case which they think should have been the will of a party, or to decide a case on how you think it ought to have been made; but your sole object is to determine whether the will made was the last will and testament of the deceased under the rules of law that I am giving you." Caveators except to this charge, upon the grounds that it unduly prejudiced their cause; that they contended in their pleading and by the evidence that this was an unnatural will; that under the evidence testatrix had every reason to remember her brothers and nephews in the disposition of her property, but had ignored them and left it to strangers; and that such will therefore came into court with the presumption of law against it. It is undoubtedly true that where a will is attacked upon the grounds of the mental incapacity of the testatrix, and of undue influence in the procurement of it, it is always proper to inquire whether the provisions of the will are just and reasonable, and in accord with the state of the testatrix's "family relations or the contrary." *Evans* v. *Arnold*, 52 *Ga.* 169 (4); *Ogburn* v. *Jones*, 142 *Ga.* 360 (2) (82 S. E. 1070); *Penn* v. *Thurman*, 144 *Ga.* 67 (3) (86 S. E. 233); *Holland* v. *Bell*, 148 *Ga.* 277 (96 S. E. 419); *Whitehead* v. *Malcom*, 161 *Ga.* 55, 57 (6*a*) (129 S. E. 769). While the above instruction is not couched in clear and apt language, we do not think that it excluded from the jury the consideration of the reasonableness or unreasonableness of the disposition made by the testatrix of her estate, in passing upon the issue of her mental capacity to make a will and upon the issue of undue influence in its procurement. What the judge intended to instruct the jury was that if the testatrix possessed sufficient mental capacity to make her will, and it was not executed under undue influence, they could not set it aside because they thought she ought to have made a different will. In this view the instruction was not erroneous.

■ The court charged the jury as follows: "And if there is not shown such weakness of mind on the part of Mrs. Lindsey as made her susceptible to these influences, then you are not permitted to go into that or to make any verdict upon that, because if she had mental capacity to make a will, although such may have been exerted, if it didn't go to the extent that I have charged you, then it would not go to the extent of destroying the will. Likewise you would not investigate the question of mental capacity to make this will if you first pass the point that you have determined from the evidence that she had capacity to make such a will as she desired to make." Caveators except to this charge, "for the reason that it removed from the consideration of the jury the question of undue influence, provided they believed that the testatrix had mental capacity to make a will." They except to the last sentence in said charge, "for the reason that the jury were instructed to set up the will, provided it represented the desires of the testatrix, regardless of whether or not she had the necessary mental capacity required by law." The first sentence of the foregoing charge, although not clearly and happily expressed, means that, if the testatrix had mental capacity to make a will, any influence exerted upon her to make it, which did not go to the extent of substituting the will of another for her will, would not destroy the will; and so construed the instruction is not erroneous. The second sentence of the charge is erroneous, for the reason that a testatrix may have sufficient mental capacity to make a will she desires to make, when free from undue influence, and yet not be mentally able to make a will which is the product of such influence; and the jury should not have been limited, in their investigation of the testatrix's mental capacity, to the former situation, and prohibited from investigating it in reference to the latter situation.

■ The court charged the jury as follows: "Eccentricity of habit or thought does not deprive any person of the power of making a testament. Old age and weakness of intellect resulting therefrom does not of itself constitute incapacity. The law makes provision that as a person grows older they naturally become weaker physically and mentally, but the law still invests them with the power and the right to dispose of their property by will, and it provides they may be eccentric, or their mind and body may

become weakened from old age, and so on, and yet have capacity to make a will and dispose of their property as they see proper. If that weakness amounts to imbecility, the testamentary capacity is gone. Imbecility means an utter want of understanding." Caveators allege that 'this charge is error for the reason that it is argumentative, that it does not clearly state the law upon the issues raised by their caveat, and that the last sentence impressed the jury with the idea that there could be no lack of mental capacity short of imbecility, and that imbecility meant an utter want of understanding. This instruction was erroneous. The court was undertaking to give to the jury the principle embraced in the Civil Code (1910), § 3841, but stopped short in failing to say that "In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question." *Mullis* v. *Phillips,* 152 *Ga.* 811 (5) (111 S. E. 400).

■ The court charged the jury as follows: "Certain evidence has been permitted to go before you as to the extent of her property, the situation of her property, the fact that she sold it, some of it, and moved from one place to another, and that it is alleged that she was harassed by others, and that certain others assisted her and lived with her, and all these things; and certain evidence has been allowed to go before you as to certain services rendered during her lifetime. Evidence as to these things is admitted for your consideration only to throw light on the question as to her mental capacity to make a will, and you will consider it for that purpose alone." Caveators allege that this charge was error, because it restricted the jury's consideration of this testimony to the question of mental capacity alone, when in fact it was also offered to show undue influence. The court erred in so restricting the jury's consideration of this evidence. The jury should have been permitted to consider this evidence upon both issues raised by the caveat.

■ Caveators offered in evidence a suit brought on February 18, 1922, by the widow, children, and grandson of A. T. (Tobe) Lindsey, against testatrix and A. D. Hogg, administrator of her husband, in which it was alleged that A. T. Lindsey, at the time of his death on January 30, 1922, had an agreement with testatrix and the administrator of her husband, by the terms of which he

was to pay testatrix the sum of $10,000, and was to pay all the indebtedness and expenses of the administration of her husband's estate, and testatrix was to convey to him all of the property, real and personal, of her deceased husband, except two mules, one colt, the notes due by Sterling Price for the purchase-money of certain land, and the use of the Lindsey residence, and 20 acres of land to be selected by testatrix, as long as she desired to occupy the same; that said contract was made to avoid litigation concerning the estate of the husband; that A. T. Lindsey claimed that he was an heir of George W. Lindsey by adoption, or, if not legally adopted, that he was virtually adopted by the husband, and as such was entitled to one half of the estate of the husband, which amounted to $20,000. This suit was to enforce the above contract. Also, the consent decree rendered in said case, in which it was adjudged that the testatrix receive from the estate of her husband $9400 in cash, $600 in notes of Alex Singleton, the Sterling Price notes amounting to $3000 or more face value, certain live stock, all household and kitchen furniture, and all personal effects such as wearing apparel and jewelry, certain land including the home place and 20 acres of land to be selected by her, and the exclusive right to use certain pastures; and in which it was adjudged that all the rest of the estate of the husband was to go to the heirs at law of A. T. Lindsey. Counsel for the propounder objected to the introduction of this evidence, on the ground that it was immaterial. The court sustained the objection. In view of the grounds of the caveat, and of opinion evidence tending to show that the testatrix's mental capacity had been seriously affected by this demand of A. T. Lindsey and the litigation brought to enforce it, witnesses for caveators basing their opinion in part upon this demand and suit, we think that this documentary evidence was admissible, and that the court erred in rejecting it.

Dr. Carl DeVane was sworn as a witness for the propounder on the hearing of the proceeding to probate this will in the court of ordinary. His testimony was stenographically reported. On the trial of the case on appeal this witness was absent, and it was shown that he was a non-resident of the State. Counsel for the propounder offered the stenographic report of the testimony of this witness. Counsel for the caveators objected upon the ground that it was not shown by the stenographer to be a correct report

of the testimony. This objection was sustained. The ordinary, before whom the probate proceeding was heard, was then permitted to testify, over objection of caveators, as to the testimony of Dr. Carl DeVane delivered on the trial in the court of ordinary. The ordinary swore that Dr. DeVane testified that he had carried Mrs. Lindsey to her husband's funeral and back home; that he did not discuss, at that time or at any other time, the making of a will by her; that he had visited her possibly more frequently after she moved than before, as it was more convenient to visit her after she got nearer to town; and that he never at any time or on any occasion mentioned to her the making of a will; that she had previously told him that she was going to take care of the orphans at Hapeville; that he had not mentioned the disposition of her property to her in any way, shape, form, or fashion; and that the first knowledge he had of the will was when he saw a notice of it in the Cedartown Standard. The ordinary testified that he remembered substantially the entire testimony of Dr. DeVane delivered on the trial of the case before him. Counsel for the caveators objected to the admission of this evidence, upon the ground that it was admitted that the testimony of Dr. DeVane at the hearing on the application for probate of the will before the ordinary was stenographically reported, that the same had been transcribed, that the transcript of the record at the time of the trial of the case was in court and could have been established as the true and correct transcript of the record, provided the official stenographer had been there to testify as to the same.

"The testimony of a witness, since deceased or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by any one who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." Civil Code (1910), § 5773. If the testimony of an inaccessible witness, given in a former trial, has been reduced to writing, and agreed upon as correct between the parties and filed under the sanction and approval of the court, it not only may but must be adduced. *Walker* v. *Walker*, 14 *Ga.* 242 (3). But where the evidence on a proceeding to probate in the court of ordinary was taken down by a stenographer and subsequently transcribed, and where it does not appear that

such report was official, or that it was agreed to by the parties, or verified in any way, the existence of such a transcript would not render inadmissible the testimony of a witness on behalf of the propounder, showing the testimony given by the inaccessible witness. *Brown* v. *Matheson,* 142 *Ga.* 396 (83 S. E. 98).

As we grant a new trial, we express no opinion on the weight on the evidence.

*Judgment reversed. All the Justices concur.*