## Carmen v. Commonwealth.

March 25, 1947.

E. J. Felts, Judge.

366

Myers, Logan & Winkenhofer and Rodes K. Myers for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Vester Carmen, his brother, Herod Carmen, and his half-brother, Jimmie D. McCatheron, were jointly indicted for the murder of Frank Hurt early on the morning of February 15, 1946. Upon his separate trial Vester was sentenced to 21 years in prison. Upon this appeal he is urging that (1) it was error for the trial court to permit the Commonwealth's Attorney to take a witness from the stand and consult with him and then recall him for further examination; (2) the confession of the appellant was obtained in violation of the Anti-Sweating Act, KRS 422.110; (3) the court erred in refusing to admit certain evidence offered by the appellant; and (4) the verdict is contrary to the law and the evidence.

For some time prior to the killing there had been bad blood between the Carmen and Hurt families, who lived in Harristown, the negro section of Franklin. A brother of Vester Carmen had been killed by a Hurt and he had been shot in the leg by one of them. Numerous threats had been made by members of each group against the other.

According to the Commonwealth's version of the killing, Vester and those jointly indicted with him were lying in ambush for the Hurts as they were proceeding down Walker Avenue about 7:30 o'clock in the morning. When Frank reached a point opposite where Vester was standing behind some honeysuckle bushes, he fired a shotgun at Frank. The charge struck him in the left side, making a wound some eight inches in diameter. Frank ran to his home and died a few hours later. Frank's brother and a woman who was with him said

the three parties who were in ambush ran after firing several shots at him, and as they did so he fired his pistol at them. Several witnesses said they heard a charge from a shotgun and then several pistol shots. Vester went to Bowling Green and surrendered to the officers there about six o'clock in the afternoon.

According to the appellant's version of the killing, he shot Frank in self-defense. He said he had been staying in Bowling Green in order to avoid further trouble with the Hurts. On the day in question he left Bowling Green about five o'clock in the morning on a coal truck for the purpose of going to the draft board in Franklin. He carried with him a shotgun which he had purchased from an unknown person. The gun was taken apart and wrapped while he was on the truck. At Franklin he assembled the gun and started down Walker Avenue toward his home. When he reached a turn in the street he encountered the Hurts. Frank fired several shots at him. He then loaded his shotgun and fired at Frank. He dropped his gun and ran to a nearby schoolhouse where he was joined by Jimmie D. McCatheron. He then went to Bowling Green and surrendered to the officers there about 6:00 p. m. He denied that either his brother Herod, or Jimmie D., was with him at the time of the shooting.

The basis for the first contention urged for reversal is that, when Buck Randolph, a former policeman in Franklin, was on the stand he said that during the latter part of August, 1945, he arrested the appellant and when he placed him in jail he said that as soon as he got out of jail he was going to kill every God damn one of ·"them." The trial judge admonished the jury not to consider this statement because the appellant had not called any particular Hurt by his first name. The Commonwealth's Attorney was then permitted to take the witness into the consultation room and after talking with him he put him back on the stand. The witness was asked if the appellant mentioned any names when he made the threat. In substance, his answer was that no particular first name was mentioned, but the appellant said he was going to kill every damn one of the Hurts. The contention is that the trial judge abused his discretion in allowing the witness Randolph to be recalled to the stand. We deem this contention to be

groundless. The witness did not change his testimony nor did he in any way contradict himself. He merely amplified his original statement by using the name Hurt. There had already been placed before the jury testimony as to the bad feeling between the two families and the jury could well have concluded from the witness's original statement that the appellant was referring to the Hurts. In the case of Howard v. Commonwealth, 178 Ky. 844, 200 S. W. 29, a witness was permitted to testify contrary to his original examination, but it was said that this merely affected his credibility and the weight of his testimony was for the jury to determine. An objection was sustained to a statement made by Randolph to the effect that he had nothing against the appellant except that several months previously the appellant had pointed a shotgun in his face when he went to arrest him. It is contended a mistrial should have been declared and the jury discharged. We think, however, that the court handled this question in a satisfactory manner.

It is next contended that statements made by the appellant to the sheriff as he was being taken from Bowling Green to Franklin were obtained in violation of KRS 422.110. The sheriff asked the appellant only two or three questions. One of them related primarily to the whereabouts of Jimmie D. McCatheron and the other related to the position of the appellant at the time he shot Frank Hurt. The appellant freely admitted he did the shooting. The sheriff said Vester told him that he was in the honeysuckles at the time the shot was fired. The latter statement merely corroborated the testimony of Frank Hurt's brother. While the sheriff did not tell the appellant that anything he said might be used against him, there was no plying of questions and the answers were given voluntarily. There was no coercion and no promise of leniency. We do not think the conduct of the sheriff in any manner ran afoul of KRS 422.110. Hager v. Commonwealth, 300 Ky. 585, 189 S. W. 2d 867.

The third ground urged for reversal relates to the refusal of the trial judge to permit the appellant to testify that the Hurts had made threats against him. In response to a question as to whether or not any threats had been made by the Hurts just before the trouble, the appellant answered, "By every one of them." Objection

was sustained to this answer because it was too general. When asked the question, "Which one of them?" his answer was, "Henry, George, and Bill Hurt, and Frank. I got in a taxi down here—I had to call a taxi up home to go back to Bowling Green, and they come down in town and tried to shoot me." An objection was sustained to this answer because it was not responsive. When asked whether or not any of the parties had ever threatened to burn his mother's home, the appellant answered, "Yes." This answer was excluded on the theory that it was improper in the trial of this case. We think the trial judge erred in refusing to allow this testimony to be introduced, in view of all the circumstances relating to this case. He had permitted the Hurts to testify relative to threats made by the Carmens, but the question is: Was a prejudicial error committed? Our view is in the negative, because the appellant had testified that, while he was previously in jail, the Hurts taunted him and said that when he got out of jail they were going to kill him. His half-brother said the Hurts had not bothered him, but that they had a grudge against his brother, meaning Vester. The appellant's mother testified that threats had been made against her and that she related this information to some of her sons, but did not mention it to appellant because he was in Bowling Green. As we have indicated, the trial court should have admitted the appellant's testimony as to threats, but when the record is viewed as a whole we fail to see how the jury was in any way misled. It was clearly established that bad blood had existed between the feuding Carmen and Hurt families for some time. There was testimony as to threats on both sides, and, at most, the testimony of the appellant would only have had a cumulative effect. In this connection it may be said that the appellant's explanation of why he had the shotgun with him was that he needed it for protection and that, "They had already done shot me and everything. I tried to slip around and get back and sign them papers and leave back out."

The last contention is that the verdict is contrary to the law and the evidence. It is obvious from what has been said heretofore that this ground is without merit. Clearly the case was one for the jury. The Commonwealth's testimony made out a clear-cut case of mur-

der from ambush, while on the other hand the appellant set up a plea of self-defense. In this connection it must not be overlooked that he had armed himself with a shotgun upon his return to Franklin from Bowling Green. The jury might as well have believed he was looking for trouble as to accept the story as to why he had so armed himself. Furthermore, the location of the wound in Frank Hurt's left side is more consonant with the Commonwealth's version of the shooting than with that of the appellant.

Since we find no error prejudicial to the appellant's substantial rights, the judgment should be and it is affirmed.