BAILEY *et al.* v. BAILEY, executor.

No. 16427. NOVEMBER 18, 1948.

*E. W. Maynard, Carlton Mobley* and *H. B. Williams,* for plaintiffs.

*Dykes & Dykes,* for defendant.

CANDLER, Justice. (After stating the foregoing facts.) ■ By the admission of a prima facie case in favor of the propounder, the caveators assumed the burden of proving that the paper sought to be propounded was not entitled to probate because of

mental incapacity of the testator or undue influence exercised over the mind of the testator by the propounder and Annie B. Wood. Our first inquiry must therefore be directed to the evidence introduced by the caveators to determine whether they have carried the burden of establishing the invalidity of the will on these grounds. First, on the issue of mental capacity, the evidence most favorable to the contentions of the caveators shows that the testator, at the time he executed the will, was about 86 years of age, and in very feeble health. The substance of the evidence was that he was "feeble," "childish," "forgetful," "unable to remember events or persons," and generally afflicted with the infirmities that accompany very old age. The fact that he was at times unable to recognize those who were closely associated with him is consistent with the testimony that his eyesight was very bad because of cataracts. The caveator, Mamie B. Bagley, a non-expert witness, testified that she did not "think that he had any grasp of the condition of his property about its disposition or how it was being handled." This testimony, however, was not based on such facts and circumstances as would authorize such a conclusion. There is nothing in the evidence that showed more than that the physical infirmities and weakness of intellect resulted from old age; however, this does not constitute mental incapacity to make a will, unless such weakness actually amounts to imbecility. Code, § 113-205. The test of mental capacity to make a will is whether the testator had such mental capacity *at the time the will was actually executed* to have a decided and rational desire as to the disposition of his property. *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423); *Brown* v. *Kendrick,* 163 *Ga.* 149, 168 (135 S. E. 721); *Hillyer* v. *Ellis,* 171 *Ga.* 300 (155 S. E. 180); *Fehn* v. *Shaw,* 199 *Ga.* 747, 754 (35 S. E. 2d, 253); *Spivey* v. *Spivey,* 202 *Ga.* 644, 652 (44 S. E. 2d, 224). None of the witnesses for the caveators testified that they saw the testator at the time, or even on the day, when the will was executed. On this question the evidence introduced by the caveators totally failed to present an issue for the jury.

■ We next consider the evidence to discern what facts, if any, were shown that would authorize the jury to find that the will in question was the result of undue influence exercised over the mind of the testator by Eugene A. Bailey and Annie B. Wood,

as alleged in the caveat. In so doing we must keep in mind the applicable rule of law that, to be sufficient to invalidate a will on the ground of undue influence, the evidence must show that such influence amounted to fear, force, overpersuasion, or coercion, to the extent of destroying the free agency and will power of the testator, and in effect made the will the mental offspring of another. *Galloway* v. *Hogg*, 167 *Ga.* 502, 524 (146 S. E. 156); *Trust Co. of Ga.* v. *Ivey*, 178 *Ga.* 629, 641 (173 S. E. 648). And it must be shown that the undue influence was operative on the mind of the testator *at the time the will was actually executed* and published. *Cook* v. *Washington*, 166 *Ga.* 329 (143 S. E. 409); *Galloway* v. *Hogg*, supra. Furthermore, "A person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence; such influence that is obtained by flattery, importunity, superiority of will, mind, or character, which would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse. Such is the kind of influence which the law condemns as undue." *DeNeiff* v. *Howell*, 138 *Ga.* 248 (75 S. E. 202). Evidence which does no more than show opportunities for exerting influence falls short of showing the exercise of undue influence required to invalidate a will. Code, § 113-208; *Orr* v. *Blalock*, 195 *Ga.* 863, 866 (25 S. E. 2d, 668); *Brumbelow* v. *Hopkins*, 197 *Ga.* 247, 251 (29 S. E. 2d, 42).

The caveators have attempted to show by their evidence that because of the confidential relation and close association which existed between the testator and Annie B. Wood and Eugene A. Bailey, the will was procured by their undue influence. The evidence shows that Annie B. Wood, to whom the testator devised his home and certain items of personal property, has lived in the home and helped care for her father since 1939. Eugene A. Bailey, to whom the testator devised a one-half interest in the mercantile business, has worked in the store since 1900, and has been a partner in the business with his father since 1920. On the other hand, the caveators would see their father only occasionally the last few years of his life. William last lived in the home with his father in 1939, and thereafter would see him on the

average of about once a month. Mamie Bagley testified that, on several occasions when she attempted to see her father, the other children would arrange something to prevent it; that she was never permitted to see her father alone.

William F. Bailey testified that, when he heard that his father had left him out of the will, he asked Eugene if it was true, and Eugene told him that he did not care to discuss it with him; that he then made arrangements by phone to talk to his father about the will, but that he was slipped away and he didn't have an opportunity to talk with him about it. Mamie Bagley, testified that she asked her father what was in the will for her, and he replied that he couldn't remember; that her father then went to the office of the lawyer who drew the will, and when he returned he appeared to be shocked and said he didn't want to talk to her about the will at that time; that she later asked her father again about the will, and he told her that he couldn't remember and to ask Eugene; that Eugene told her that she had been left $2000, and she asked her father if that was correct, and he replied that Eugene knew what was in the will and that he didn't remember anything about it; that her father told her that she would have the interest in the home and that she would continue to receive money for her support. William F. Bailey Jr. testified that he asked the testator about the rumor that his father had been left out of the will, and that the testator replied that he would not leave any of his children out of his will.

For the purpose of showing an unequal distribution of the estate among the children, the caveators introduced evidence as to the value of the estate; however, this evidence was in sharp conflict with that offered by the propounder. Mamie Bagley testified that she had been receiving money from her father since 1939. She at first received $16 per month, but this was increased from time to time, and she was receiving $90 per month at the time of her father's death. Evidence concerning the amounts actually advanced to William Bailey by the testator was also in sharp conflict.

The witnesses for the caveators testified that the testator, in the last few years of his life, particularly since his illness in 1939, followed the line of least resistance and usually tried to acquiesce in anything that anybody suggested. Mamie Bagley testified

that her father left his affairs in Eugene's hands. This testimony is not inconsistent with that concerning the testator's age and physical infirmities.

The language employed in *Hill* v. *Deal*, 185 *Ga.* 42, 45 (193 S. E. 858), is particularly applicable to the facts in the present case. It was there said: "One or all of the foregoing pieces of testimony might raise the suspicion that the paper offered for probate was not the will of Mrs. Mary A. Deal, but that instead it was executed by her when old and feeble and on account of some undue influence exercised over her by the two daughters named; but there is no circumstance or a chain of circumstances that would justify a verdict based on the theory that any undue influence was exercised. A bare suspicion, even in a civil case, can not be the basis of a finding of fact. The most that could be claimed would be that there are circumstances in the record that show that the two sole beneficiaries had the opportunity to exercise or to attempt to exercise undue influence on their mother at about the time the instrument was signed. There is no evidence that they did exercise it, and nothing to justify the inference that they did. The fact that the two daughters were with the testatrix during her latter days more than the caveators were, affords no basis for a finding that they used undue influence."

The caveators having admitted a prima facie case in favor of the propounder, and having then failed to carry the burden of establishing the invalidity of the will on the ground of undue influence or mental incapacity, the finding of the jury upholding the validity of the will was the only verdict which they could have legally rendered.

Under the foregoing ruling, a consideration of the special assignments of error becomes unnecessary.

The trial court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*