### RICKETSON v. RICKETSON.

No error requiring a new trial appears in the judge's instructions to the jury, or in omissions to charge, on the trial of issues of a grantor's mental capacity to make a deed, and of fraud and undue influence in obtaining its execution; and the verdict was supported by evidence.

Nos. 2319, 2320. MAY 13, 1921.

Equitable petition. Before Judge Walker. Warren superior court. November 4, 1920.

Saphronia A. Ricketson died on June 10, 1919. On the preceding afternoon she had executed a deed conveying to Virginia A. Ricketson (a sister) her half undivided interest in 270 acres of described land. An equitable petition was brought by R. F. Ricketson (a half brother of the grantor and grantee in the deed), praying that the deed be canceled, and that title to the real estate be decreed to be in the estate of Saphronia A. Ricketson. It was alleged that Saphronia died intestate; that the plaintiff was an heir at law; that at the time of the execution of the deed she was in her eighty-fourth year; that for a long time prior thereto she was very infirm and possessed little or no memory or will power; that her mental capacity had become greatly impaired and enfeebled; that

she was wholly incapable of making an intelligent voluntary disposition of her property, and was incapable of knowing and understanding the character, terms, and disposition of the real estate, as contained in the deed; that she was entirely under the influence and control of Virginia A. Ricketson, who unduly influenced and persuaded her to execute said deed, and who fraudulently induced her sister to execute the deed upon the belief that it in fact conveyed the property equally to all her brothers and sisters, or upon the belief that it conveyed the property to Virginia A. for life, and in remainder equally to each of her brothers and sisters; and that the attorney who prepared the deed was employed for that purpose by Dr. F. B. Ricketson (also a half brother of the grantor and grantee, and full brother of the plaintiff), who gave directions and instructions for the preparation of the deed and paid the fee of the attorney therefor. The defendant's answer denied all the material averments of the petition. The jury returned a verdict in favor of the defendant, and upon the overruling of his motion for new trial the plaintiff excepted.

The plaintiff testified, that the grantor in the deed was ill for about ten days prior to her death; that during this time and for several months prior thereto she acted differently to what she had theretofore. " You could not draw her out on any subject whatever. She would not talk. When I went there to see her she would sit there seeming to be in a trance, looking away off possibly like she was in deep study about something. . . I would try to talk to her, and she would not talk. From these conditions and facts I would say that her mental condition was not what it had been, and that it was bad. I would say from those conditions that she was not mentally capable of making any contract and carrying on any business, and was not competent to make a disposition of her property." He testified, that he visited his sister on Saturday before she died on Tuesday; that she was at that time in very weak physical condition; unable to help herself at all; " there was nothing especially to indicate that her mind was bad, only from this fact. She did not act or say anything to show that her mind was flighty, only from the fact that she had nothing to say. She lay there like as if she didn't know nothing and didn't want to know nothing. She could talk in very low tones, but she did not talk but would only answer to and fro, yes or no. She carried on no conversation.

. . Taking into consideration the actions, conduct, and demeanor of Saphronia I would say that she was not competent mentally to execute a deed to her property on the 10th day of June, 1919." He further testified that his sister had on several occasions stated to him that she wished her property equally divided among her brothers and sisters upon her death; and that on the occasion of his visit just mentioned he made enquiry of his sister Virginia Ann as to whether their sister Saphronia " had made any special writing or in any other way disposed of her estate," and was informed that she had not. On cross-examination he stated that the two sisters, Saphronia and Virginia, lived for about thirty-nine years on the farm owned in common by them, being alone most of that time; that the mind of his sister did not give way entirely; that, as to whether she would have had sufficient mental capacity to alter her intentions respecting the disposition of her property between the time of the statements made to him and the date of the execution of the deed, he was not an expert and did not know; " she knew me and some things as long as she lived; . . she called me Robert every time she saw me." The plaintiff introduced the testimony of the attorney who prepared the deed, to the effect that it was done according to the direction of Dr. Ricketson, who paid his fee. The only other evidence offered by plaintiff was that of three witnesses to the effect that they had heard Dr. Ricketson express doubt as to the mental capacity of the grantor to manage her affairs.

The testimony of the defendant and a number of other witnesses in her behalf was to the effect that Saphronia was the elder of the two sisters; that she had always possessed a strong mind; that during all the years the two sisters had lived together she had assumed the active management and control of the farm; and that the sister Virginia exercised no undue influence over her. One of the attesting witnesses to the deed testified that upon the occasion of its execution the maker stated that she was weak and could not see; that he read to her the printed part, the description of the land, told her the date, that it conveyed her interest to Miss Ann, and she understood the same; that he asked her if she knew him, and she stated that she did, and recalled the fact that about two years previously he and his wife had stopped at her home and gathered scuppernongs. The other attesting witness testified that

the maker of the deed had not known him previously to the execution of the deed, and that upon being asked whether she knew him she stated that she did not. Dr. Ricketson, half brother of the maker of the deed and full brother of the plaintiff, testified, that he had attended the deceased during her illness; that any statements made by him, relative to her incapacity to manage her affairs, had reference to her physical and not her mental capacity; and that he procured the preparation of the deed and the witnesses thereto upon the request of the maker. Dr. Ricketson, the witnesses to the deed, and a number of other witnesses swore unequivocally that the grantor, though weak physically, was clear mentally and fully capacitated to make the deed.

*L. D. McGregor,* for plaintiff.

*E. P. & J. Cecil Davis,* for defendant.

GILBERT, J. 1. The court instructed the jury as follows: " To establish incapacity of the grantor, Miss Saphronia Ricketson, she must be shown to have been, at the time of making the deed, non compos mentis in the legal acceptation of that term, which means not a partial but an entire loss of understanding. If Miss Saphronia Ricketson, the grantor in the deed now under investigation, had enough mind and reason to understand the nature of the consequences of her act in making the deed, she is to be considered sane. If she lacked that capacity, she is to be considered insane. Unless the grantor, Miss Saphronia Ricketson was afflicted with an entire loss of understanding, she must be considered as having capacity to make the deed." Error was assigned on this instruction, on the ground that it " required the plaintiff to show that the grantor was really weaker mentally' than would be necessary to nullify the deed." In view of the evidence in the case and the charge in its entirety, this instruction is not cause for a new trial, especially where the court did instruct the jury that if " the grantor in the deed now under investigation had enough mind and reason to understand the nature and consequences of her act in making the deed, she is to be considered sane. If she lacked that capacity, she is to be considered insane." *Bryan* v. *Bryan,* 139 *Ga.* 51 (2) (76 S. E. 563), and authorities cited; *Smith* v. *McClure,* ante, 484 (107 S. E. 330). The only evidence of mental incapacity was the opinion of the plaintiff, an interested, non-expert witness, who was not present when the deed was executed, and who admitted

that the mind of the grantor " did not give way entirely." It was a voluntary deed, no question of inadequacy of consideration being involved. Compare *Richardson* v. *Adams*, 110 *Ga.* 425, 427 (35 S. E. 648).

2. The court instructed the jury as follows: " A person standing in a confidential relation to another is not prevented from exercising any influence whatever to obtain a benefit to himself," and also: " And in this case I charge you that even though you might believe the evidence that the defendant talked to her sister, Miss Saphronia Ricketson, about the deed and advised her to make it and to convey her interest in the plantation to her, this would not authorize you to set the deed aside, unless you further believe from the evidence that the defendant, Miss Ann Ricketson, was so persistent in her efforts to secure the deed from her sister as to destroy the free agency of Miss Saphronia, and caused her to make the deed against her will, but which she was powerless to refuse to make." In view of the context and of the evidence the above-quoted instructions show no cause for the grant of a new trial. Aside from the fact that the grantor and the grantee were sisters who resided together for many years, there is no evidence whatever in the record tending to show undue influence or to justify an inference of such. *DeNeiff* v. *Howell*, 138 *Ga.* 248 (6), 251 (75 S. E. 202).

3. The judge instructed the jury as follows: " I charge you further that if you believe from the evidence that Miss Saphronia Ricketson at the time she made the deed had capacity to make it, and that she understood what she was doing, and no fraud or deception was practiced upon her, and that no undue influence so as to destroy her free agency was exercised over her and which induced her to make the deed against her will, she had the right to request either Miss Ann Ricketson, the defendant in this case, or Dr. F. B. Ricketson, to have the deed prepared; and if defendant or Dr. F. B. Ricketson had deed prepared and secured the witnesses to it or brought the witnesses and deed to her and assisted in the actual execution of it, this I charge you would not be any ground to set the deed aside." Error is assigned on this charge, on the ground that it was an expression of the opinion of the judge that the grantor had in fact requested that the deed be prepared and the witnesses brought to her for the purpose of executing the deed.

There was direct evidence to this effect, and the charge was therefore warranted. We do not think it subject to the criticism made.

4. The court instructed the jury as follows: "If in your investigation you should find, under the evidence, facts and circumstances, and the rules of law given you in charge thereto, you should find that the plaintiff has failed to carry this burden, or make good his contentions on one of his grounds, you need not go any further in your investigation, and your finding would be for the defendant in this case." Considering the charge in its entirety and the evidence in the case, this instruction will not require a new trial.

5. Error is assigned on the failure of the court to instruct the jury in regard to the allegation in the petition that the grantor was made to believe that she was executing a deed to the grantee therein to the property for and during her life, with remainder to her sisters and brothers. There being no evidence upon which to base this issue, the court did not err in failing to instruct the jury on that subject.

6. The complaint that the case was closely contested and that the judge " did not charge and state with equal explicitness and fairness the contentions and theories of the plaintiff's side of the case as he did those of the defendant's side of the case, and that the theories of the defendant's side of the case were more favorably stated," is not borne out by the record. While the instructions to the jury are subject to some criticism, as above indicated, we think the issues, as shown by the evidence and pleadings, were stated with substantial accuracy; and if the plaintiff desired more elaborate instructions on any subject, he should have duly requested the court in writing.

7. The verdict is supported by evidence.

*Judgment on main bill of exceptions affirmed. Cross-bill of exceptions dismissed. All the Justices concur.*