*J. R. Thompson Jr.* and *Loren Bush Rockey,* contra.

BUTLER *et al. v.* LASHLEY.

No. 14767.   FEBRUARY 9, 1944.   REHEARING DENIED MARCH 9, 1944.

466

*Young H. Fraser, H. Olin Hubert Jr.,* and *Foley & Chappell,* for plaintiffs in error.

*J. Madden Halcher, R. M. Arnold,* and *W. G. Love,* contra.

WYATT, Justice. (After stating the foregoing facts.)

The first of the two grounds of attack upon the will was lack of testamentary capacity. Several witnesses, including four doctors, delivered testimony touching the mental capacity of Sidney Porter at the time of the execution of the will; and the evidence in this respect overwhelmingly showed him to be a man of strong mind and firm convictions. In fact counsel for the plaintiffs in error, in their oral argument before this court, conceded that there was no evidence to support this contention.

■  The remaining ground of attack now insisted upon was the alleged undue influence, coupled with coercion and fraud, practiced upon the testator by Pearl Lashley. "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator." Code, § 113-208. And "a will procured by misrepresentation or fraud of any kind, to the injury of the heirs at law, is void." § 113-209. In the statement of facts we have quoted at length from the testimony of Twilight Reed, one of the caveators, and others, setting out in detail all the evidence favorable to the contentions of the caveators, for the reason that, if undue influence, duress, coercion, or fraud can be established by any fact or facts from the testimony, such fact or facts must be found in that evidence. No other witness testified to any fact or circumstance of probative value tending to support this contention. The issue being one of devisavit vel non, the burden in the first instance was upon the propounder of the alleged will to make out a prima facie case by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and so acted freely and voluntarily. And when this is 'done, the burden of proof shifts to the caveators. *Thompson* v. *Davitte, 59 Ga. 472,* 475; *Credille* v. *Credille, 123 Ga. 673 (2) (51 S. E. 628, 107 Am. St. R. 157); Edenfield* v. *Boyd, 143 Ga. 95 (84 S. E. 436); Bullock* v. *Martin, 144 Ga. 731 (87 S. E. 1058); Smoot* v. *Alexander, 188 Ga. 203 (3 S. E. 2d, 593).* This burden was fully carried by the testimony of two of the subscribing witnesses.

We next look to the evidence of the caveators, to discern what fact, if any, was shown in the case that could be considered as having influenced, coerced, or defrauded Sidney Porter into executing and publishing the will in question. The only evidence of any fact that could be classed as fraudulent or deceptive is the testimony of Twilight Reed that Pearl Lashley repeatedly stated to Sidney Porter that Twilight, his daughter, did not love him. The burden was on the caveators to prove that this statement was made for the purpose of influencing the testator to make the will, which he would not have made but for the deception wrought by the

statement; and to say that the statement did deceive the testator, they would necessarily have to establish the falsity of the charge. Twilight, the daughter about whom the statement was made, was the only witness who testified concerning this statement made by Pearl Lashley, and she did not deny the truth of the statement, nor did she testify that, as a matter of fact, she did love her father. The evidence as a whole failed to show an attitude on the part of either of the daughters indicating any very deep affection for their father. The evidence wholly fails to show that this statement by Pearl had any influence whatever on the mind of Sidney Porter at the time he executed his will. Can it be said that this statement, which may or may not have been a truthful statement, made by a person who could know no more about the affection of the daughter for the father than the father himself knew, had the effect of controlling the mind of this man of strong intellect to the extent of substituting the will of Pearl Lashley for that of the testator? Especially is this true when the evidence is silent as to whether Pearl ever discussed with the testator how or to whom he should by will dispose of his property. It must be remembered that the statements were made several years, at least five or six, before the execution of the will; and nowhere in the evidence does it appear that the statement was made with the view or intent of influencing the testator, or coercing him in the making of his will. In fact, the evidence fails to disclose that the subject of making a will was ever discussed or referred to by Pearl Lashley in any conversation with the testator. "Undue influence or fraud, to invalidate the will, must amount to force or fear—must, in effect, make the will the mental offspring of some other person; and must be operative on the mind of the testator at the time the will is executed." ' *Thompson* v. *Daville,* supra. "Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency." *Bohler* v. *Hicks,* 120 *Ga.* 800 (5) (48 S. E. 306). In the case of *Morris* v. *Stokes,* 21 *Ga.* 552, 572, the court, in commenting upon the character of influence which would invalidate a will, stated that "the only test is, is the testator's free agency destroyed?" In that case the trial judge charged the jury in words from 1 Williams on Executors, 39, as follows: "There must be proof that the act was obtained by force and coercion, by impor-

tunity which could not be resisted, that it was done merely for, the sake of peace, that the motive was tatamount to force and fear." The court approved the charge. In *Slade* v. *Slade,* 155 *Ga.* 851, 863 (118 S. E. 645), it was said that "such fraud as will invalidate a will must be fraud which operates upon the testatrix—a procurement of the execution of the will by misrepresentations made to the testatrix. 'Fraud sufficient to invalidate a will exists only when it is shown that the testator relied on the misrepresentation and was deceived.' 40 Cyc. 1143." The construction of the evidence most favorable to the caveators shows that it might be infered that Pearl Lashley was a woman of dominant character. On one occasion she threatened the life of Porter if he did not let Jack Lashley stay at the store. On another occasion she threatened to put Porter out of the house because he objected to her having several bottles of herbs in the house. This was the house that Porter had given to Pearl, and in which they lived for about ten or eleven years before his death, and according to Twilight, they lived in a state of adultery and fornication. There was also evidence to the effect that in 1932 Porter had Judge Palmer prepare a will for him, but that he never signed it, stating that Pearl raised so much sand about it, and before he would sign it other than the way he wanted it, he would give his property to the city. The evidence of the caveators is wholly silent as to the circumstances surrounding the execution of the will. As was said in *Hill* v. *Deal,* 185 *Ga.* 42, 45 (193 S. E. 858): "One or all of the foregoing pieces of testimony might raise the suspicion that the paper offered for probate was not the will of . . [the testatrix], but that instead it was executed by her when old and feeble and on account of some undue influence exercised over her by the two daughters named; but there is no circumstance or a chain of circumstances that would justify a verdict based on the theory that any undue influence was exercised. A bare suspicion, even in a civil case, can not be the basis of a finding of fact. The most that could be claimed would be that there are circumstances in the record that show that the two sole beneficiaries had the opportunity to exercise or to attempt to exercise undue influence on their mother at about the time the instrument was signed. There was no evidence that they did exercise it, and nothing to justify the inference that they did. The fact that the two daughters were

with the testatrix during her latter days, more than the caveators were, affords no basis for a finding that they used undue influence." That very language is fittingly applicable to the facts in the present case. See *Brumbelow* v. *Hopkins,* 197 *Ga.* 247 (29 S. E. 2d, 42). "Undue influence in procuring a will to be made must amount to moral coercion; it must destroy the free agency of the testator and constrain him to do what is against his will but which he is unable to refuse. Not all influence is undue." *Griffin* v. *Barrett,* 183 *Ga.* 152, 164 (187 S. E. 828), citing *De-Nieff* v. *Howell,* 138 *Ga.* 248 (6) (75 S. E. 202); *Burroughs* v. *Reed,* 150 *Ga.* 724 (105 S. E. 290); *Ricketson* v. *Ricketson,* 151 *Ga.* 540 (107 S. E. 522); *Ward* v. *Morris,* 153 *Ga.* 421 (3) (112 S. E. 719), and others.

Again it must be kept in mind that the testator not only did not exclude his daughters as beneficiaries under his will, but on the contrary he made substantial bequests in their behalf. The other beneficiaries, Pearl Lashley, Jack Lashley, and Annie Pearl Porter, while of no blood relationship to him, were of a relationship from which one could well assume that he had considerable interest in their welfare and felt much responsibility to them. Pearl had been his housekeeper and helper in his business affairs for eleven or twelve years. Jack Lashley had been in his home since he was a small boy, and no doubt had rendered valuable services in and about the store; in fact Porter was the only father so to speak that Jack had known. The same may be said in reference to Annie Pearl Porter, a child who had been given to the testator and Pearl Lashley at the time of her birth. She had been given his name, apparently by usage, and according to the evidence, was his heart's delight. We refer to these last-mentioned beneficiaries merely for the purpose of showing the relation which they occupied to the testator.

Under the above views, we reach the conclusion that the finding of the jury upholding the validity of the will, under the evidence, was the only verdict which they could have legally rendered.

█ Under the foregoing ruling, a consideration of the special assignments of error becomes unnecessary.

The lower court did not err in overruling the motion for new trial.           *Judgment affirmed. All the Justices concur.*